Kurt B. KNIGHT, Appellant,

v.

George LOMBARDI, William Armontrout, Warden, Arthur W. Dearixon, Mary Basham, Appellees.

No. 90–2521.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1991.

Decided Dec. 10, 1991.

J. Jeffrey Spainhower, Jefferson City, Mo., argued, for appellant.

Kelly Mescher, Jefferson City, Mo., argued (William L. Webster and Kelly Mescher on the brief), for appellees.

Before JOHN R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

Kurt B. Knight appeals the district court's[1] dismissal of his § 1983 suit against four corrections officials at the Missouri State Penitentiary. He claims that his First Amendment and procedural due process rights were violated when defendants wrongfully withheld personal letters from a prison guard with whom Knight was suspected of having an affair. We affirm.

Knight is serving a long sentence in the Missouri prisons. In June 1988, prison officials were investigating whether Knight was having an affair with a female prison guard, Loretta Downing, who was then married to another guard at the same prison. As part of their investigation, defendant Arthur W. Dearixon, Investigator for the Penitentiary, caused defendant Mary Basham, Mailroom Supervisor, to intercept certain letters to Knight from "Kay Mason." Dearixon sent the letters to the State Highway Patrol for fingerprint analysis and learned that Downing's fingerprints were on at least one of them. The letters were then withheld without any immediate notice to Knight.

On July 7, 1988, Downing resigned her position before the investigation of her conduct was completed. On July 12, Knight wrote defendant George Lombardi, Director of the Division of Adult Institutions, complaining that his personal mail was being withheld. On July 21, Lombardi responded, acknowledging that letters to Knight from "a staff person who was placed on Administrative Leave a short time ago" were being held "as evidence in that particular case." Prison officials continued to intercept letters after Downing resigned so that, from June through August of 1988, at least twelve letters from Downing to Knight were seized.

In July 1988, Knight had filed a § 1983 suit challenging his segregation from the general prison population. In September, he amended this complaint to include a claim that seizure of his personal mail vio-lated his First Amendment rights. Nearly a year later, after discovery and a hearing at which Dearixon explained why this mail had been seized, Knight dismissed this complaint without prejudice.

On October 16, 1989, Knight filed his complaint in this action, alleging defendants violated his First Amendment and procedural due process rights in seizing his letters from Downing. Defendants were ordered to show cause why Knight should not be permitted to proceed in forma pauperis. They urged the magistrate judge to take judicial notice of the record from the first case and dismiss this complaint as frivolous. *See* 28 U.S.C. § 1915(d).

On March 13, 1990, the magistrate judge recommended dismissal, and Knight filed written exceptions. On July 13, while the recommendation to dismiss was pending before the district court, defendants advised the court that the withheld letters would be delivered to Knight on July 16. On July 25, 1990, the district court dismissed the complaint as frivolous, explaining that censorship of inmate mail may be justified on the basis of prison security and that the actions of defendants in this case "withstand scrutiny under the standards set forth in *Turner v. Safley,* 482 U.S. 78 [107 S.Ct. 2254, 96 L.Ed.2d 64] (1987) and *Thornburgh v. Abbott,* [490 U.S. 401] 109 S.Ct. 1874 [104 L.Ed.2d 459] (1989)." Knight, who has now been transferred to another Missouri prison and has married Downing, appeals.

Although the § 1915(d) dismissal was made prior to service of the complaint, the district court had access to, and properly considered, the evidentiary record from the prior lawsuit, and in particular, the testimony under oath by defendant Dearixon as to the reasons Downing's letters were seized. On this expanded record, we agree with the district court's decision to dismiss Knight's complaint as legally frivolous.

 Dearixon testified that prison authorities seized Downing's letters for the

---

1. The HONORABLE SCOTT O. WRIGHT, United States District Judge for the Western District of Missouri, whose dismissal order adopted the recommendation of the Hon. William A. Knox, United States Magistrate Judge for the Western District of Missouri.

following reasons: (1) to investigate whether Downing was violating prison rules by having an affair with, and corresponding with, an inmate;[2] (2) as evidence in that investigation; (3) because of concern that Downing might use her knowledge of prison security to help Knight escape; and (4) because of the general prison policy against inmates corresponding with prison staff. These were obviously legitimate concerns. Therefore, we agree with the district court that defendants' actions in seizing Downing's letters for a reasonable length of time did not violate Knight's First Amendment rights because the seizure was "reasonably related to penological interests." *Thornburgh v. Abbott*, 490 U.S. at 413, 109 S.Ct. at 1881, quoting *Turner v. Safley*, 482 U.S. at 89, 107 S.Ct. at 2261. Knight argues that defendants were excessively restrictive because they seized too many letters over too long a period, because they had no evidence that Downing was planning to help Knight escape, because they seized letters Downing wrote after she had left prison employ, and because they never bothered to read the letters they had seized. However, none of these arguments overcomes the unique combination of investigative and security interests that justified this particularized interception of some of Knight's personal mail.[3]

On appeal, Knight places greatest emphasis on his procedural due process claim, arguing that defendants *never* gave him the notice of seizure required by the prison's own internal regulations. It is well settled that an inmate's First Amendment interest in uncensored communication by letter requires "that the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." *Procunier v. Martinez*, 416 U.S. 396, 417, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974); *see Trudeau*

*v. Wyrick*, 713 F.2d 1360, 1366 (8th Cir. 1983).

In this case, it is undisputed that Knight had actual notice of the seizure no later than July 12, 1988, when he complained in writing to Lombardi. Lombardi acknowledged in writing that letters were being withheld nine days later. Knight complains only that he did not receive the form of notice contemplated by the prison regulations. He does not claim that he was denied an opportunity to file a grievance to protest the seizure. He does not claim that any alleged procedural deprivation caused the long, unexplained delay in delivery of Downing's letters to him. In short, although the failure to promptly notify Knight of the seizures was arguably a procedural due process violation, there is no allegation or evidence of injury flowing from that alleged violation, and the undisputed facts demonstrate that Knight failed to avail himself of available prison procedures to review the propriety of the withholding of these letters. Thus, this is not a case like *Trudeau* in which the failure to give notice of the seizure had "disastrous consequences for plaintiff." 713 F.2d at 1366. In these circumstances, Knight's procedural due process claim, like his First Amendment claim, was properly dismissed pursuant to § 1915(d).

For the above reasons, the district court's judgment of dismissal is affirmed.

---

**2.** This situation was viewed as particularly volatile because Downing was married to another guard.

**3.** The investigation of prison rule violations by Downing, and the termination of the seizures after three months, distinguish this case from *Stevens v. Ralston*, 674 F.2d 759 (8th Cir.1982).

Although the seized letters were withheld for a lengthy period, Knight apparently made no request to obtain them after receiving Lombardi's July 21, 1988 letter stating that they were being held as evidence. Knight was obviously more interested in a lawsuit over principle than in a practical resolution of this unusual situation.