# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1868

_____

Jose M. Ortiz,                                    *
                                                  *
                    Appellant,                    *
                                                  *    Appeal from the United States
         v.                                       *    District Court for the
                                                  *    Northern District of Iowa.
Fort Dodge Correctional Facility;                 *
Tom Connelly,                                     *
                                                  *
                    Appellees.                    *

_____

Submitted: March 10, 2004

Filed: May 25, 2004

_____

Before MURPHY, HEANEY and SMITH, Circuit Judges.

_____

HEANEY, Circuit Judge.

At the time he filed this action, Jose M. Ortiz was an inmate at the Fort Dodge Correction Facility (FDCF) in Iowa. Originally from Mexico City, Mexico, Ortiz's native language is Spanish, but he is also fluent in English. On August 30, 2000, in accordance with prison policy, Ortiz formally requested to write letters in Spanish to various members of his family. At that time, FDCF's policy permitted written communication in a foreign language if that was the only language in which the inmate could communicate. Thomas Conley, Ortiz's Unit Manager, allowed Ortiz to

write letters to his sister in Mexico City in Spanish because it was the only way he could communicate with her, but denied his request as to all other family members, including his mother who lived in the United States. Ortiz could not receive letters written in Spanish from those family members either. Ortiz filed a grievance challenging Conley's application of FDCF's rule. On December 8, 2000, while his grievance was pending, FDCF changed its policy and permitted all inmates to correspond in their preferred language. Ortiz was then allowed to correspond in Spanish with all of his family members.

Ortiz brought suit against FDCF and Conley seeking compensatory and punitive damages stemming from the First Amendment violation he maintains occurred during the three months that he was unable to write or receive letters in Spanish. Two witnesses, Ortiz and Conley, were called during the bench trial. The district court[1] determined that FDCF's former policy of monitoring prison mail was reasonably related to a penological interest, and accordingly found in favor of FDCF and Conley. Ortiz appeals. We affirm.

## ANALYSIS

When reviewing the district court's factual conclusions, we use a clearly erroneous standard; for legal conclusions, we conduct a de novo review. Love v. Reed, 216 F.3d 682, 687 (8th Cir. 2000). In Turner v. Safley, 482 U.S. 78, 89 (1987), the Supreme Court stated that prison regulations pass constitutional muster if they are "reasonably related to legitimate penological interests." Turner instructs us to examine four factors when determining whether the regulation withstands scrutiny:

---

[1]The Honorable John A. Jarvey, United States Magistrate Judge for the Northern District of Iowa, presiding with the consent of the parties pursuant to 28 U.S.C. § 636(c).

(1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation.

Thongvanh v. Thalacker, 17 F.3d 256, 259 (8th Cir. 1994).[2]

FDCF and Conley argue the Iowa prison system has a legitimate security interest in regulating inmates' mail, thus satisfying the first factor in Turner. If a prisoner is allowed to correspond in a language the prison officials cannot decipher, the institution runs the risk that a plot to escape or smuggle items in could be planned. They assert that the so-called "English-only" rule furthers the effectiveness of prison officials in maintaining order within prison confines. Ortiz attacks this rationale by pointing to its inconsistency: He was free to communicate in Spanish via letters to his sister in Mexico City and he was free to speak in Spanish, over the telephone or in person, with other family members.

While prisoners have a right to send and receive mail, prison officials have a legitimate interest in monitoring that mail for security reasons. See Thongvanh, 17 F.3d at 258-59 (stating that the prison's responsibility to maintain order may include reading incoming and outgoing mail); Smith, 995 F.2d at 830 (recognizing a legitimate security interest in monitoring outgoing mail); Sisneros v. Nix, 884

---

[2]We note that while it appears the Supreme Court left open the possibility of applying a stricter standard to prison regulations involving outgoing mail, see Thornburgh v. Abbott, 490 U.S. 401, 413 (1989), our circuit has applied the Turner test to such prison regulations. See Smith v. Delo, 995 F.2d 827, 830 (8th Cir. 1993) (concluding that the Turner test applies to outgoing mail regulations); see also Thongvanh, 17 F.3d at 259 ("We have previously held that claims involving inmate mail – both incoming and outgoing – must be measured against the standard set out in Turner.").

F.Supp. 1313, 1329 (S.D. Iowa 1995) (finding an English-only correspondence rule to be rationally related to preserving the prison's security interest). Ortiz has identified several avenues by which an inmate could still plan an escape route or smuggle items into the prison even with the imposition of the English-only rule. That does not mean, however, that FDCF's policy was not rationally related to lessening those risks. See Herlein v. Higgins, 172 F.3d 1089, 1091 (8th Cir. 1999) (stating that Turner does not require "actual proof that a legitimate interest will be furthered by the challenged policy," only that the interest being served and the policy have an "objectively rational" connection).[3]

The second Turner factor asks whether the inmate has another way to exercise his constitutional right; in this case, communicating with his family. We agree with the district court that Ortiz had other avenues by which he could have communicated with his family members. He was allowed to call them on the phone and to receive them in person. These forms of communication are sufficient alternatives to letter writing. See Smith, 995 F.2d at 831 (finding telephone conversations and in-person meetings to be acceptable forms of alternative communication).

The third and fourth factors under the Turner framework call for an evaluation of the alternatives to the existing regulation and their impact on the prison, inmates, and non-inmates. If a ready alternative to the challenged prison regulation exists, the regulation is invalid. The alternative, however, must not impose more than a de minimis cost on the prison system. See Thornburgh, 490 U.S. at 418; Turner, 482 U.S. at 93. Ortiz relies on Thongvanh as authority supporting his argument that the prison should have accommodated him – either by employing translators to read his mail or by not reading his mail at all. In Thongvanh, a Laotian prisoner was denied

---

[3]FDCF changed its policy as a result of an influx of foreign-speaking inmates. Instead of indicating that its policy was never related to a legitimate interest as Ortiz suggests, we view this shift in policy as a constructive and continuing attempt by FDCF to balance competing First Amendment concerns with safety concerns.

an opportunity to communicate with non-inmates in Lao, despite the fact that Spanish and German inmates were afforded the opportunity to communicate in their native languages and a translation service offered, without cost, to translate the letters into English. 17 F.3d at 258. A jury found the prison's regulation violated the inmate's First Amendment rights. The verdict was affirmed on appeal. Id. at 259-60.

Ortiz, unlike Thongvanh, did not identify a cost-free way for the prison to accommodate him. He did not introduce at trial what the cost of hiring an interpreter would be, whether FDCF had any Spanish-speaking employees, whether other prisons could have interpreted the letters, or whether a social service agency was willing to translate the letters on the prison's behalf. Absent proof of such a ready alternative, we agree with the district court that Ortiz presents a far less compelling case than the case presented in Thongvanh.

## CONCLUSION

For the reasons stated, we affirm the district court.

_____