# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2271

_____

Michael Jon Herlein,

          Appellee,

      v.

Charles Higgins,  MPCF Deputy
Superintendent; Andrea Wright,
MPCF Grievance Officer; and
David Bell, MPCF Correctional
Counselor,

          Appellants.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the Southern
\*  District of Iowa.
\*
\*
\*
\*
\*
\*
\*

_____

Submitted:  February 9, 1999

Filed: April 20, 1999

_____

Before WOLLMAN, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Michael Jon Herlein, formerly an inmate at the Mount Pleasant Correctional Facility (MPCF), sued three MPCF officials, challenging on First Amendment grounds the prison's ban on the possession of music cassettes bearing the warning "parental advisory -- explicit lyrics."  The trial court denied an injunction but granted

declaratory relief and awarded nominal damages to Mr. Herlein. The defendants appeal, and we reverse.

I.

Prison regulations survive a constitutional challenge if they are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). In Turner, the Supreme Court upheld a ban on inmate-to-inmate correspondence and identified four considerations that are material in such decisions: Whether a " 'valid, rational connection' " exists between the prison policy and a legitimate government interest; whether alternative means of exercising the asserted right are open to inmates; whether ready alternatives are available that accommodate the asserted right at de minimis cost to the pursuit of valid penological objectives; and whether accommodation of the asserted right will have negative effects on guards, inmates, or prison resources. Id. at 89-91, quoting Block v. Rutherford, 468 U.S. 576, 586 (1984). Assuming arguendo that there is a constitutional right to possess music tapes, and that this right is one of those retained by prisoners, we consider each of these matters in turn.

The MPCF officials assert that security in prisons is a legitimate government interest, and note specifically the threat to security that can arise from exposing the gang members and sex offenders detained at MPCF to music with explicit lyrics. Security, of course, is a valid penological objective. See, e.g., O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). The trial court ruled, however, that the defendants failed to demonstrate a rational connection between banning tapes with warning labels and maintaining security.

In Turner, 482 U.S. at 89-90, the Supreme Court stated that the connection between a prison regulation and a government interest is inadequate when "the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." We do not believe that it is arbitrary or irrational to

-2-

believe that music with violent or sexually explicit lyrics might present a security risk in an environment that includes gangs and sex offenders.

Mr. Herlein further argues, however, that the overbreadth of the policy is demonstrated by the lack of evidence of security difficulties caused by the censored material prior to the ban, and notes the lack of trial evidence of any such difficulties. There is nothing in our cases, though, that requires actual proof that a legitimate interest will be furthered by the challenged policy. The connection between the two need be only objectively rational. In fact, the Supreme Court held in Turner, 482 U.S. at 91-92, that a ban on inmate-to-inmate correspondence was rationally connected to maintaining security and to suppressing gang activity, without adverting to any specific evidence that such correspondence had led to violence or gang activity in the past.

## II.

The trial court found that Mr. Herlein had only "limited and random" means of obtaining the banned music over the radio. The Supreme Court has taken a broad view, however, of what can constitute alternative avenues for the exercise of a right, and has pointed out, for instance, that a ban on inmate-to-inmate correspondence "does not deprive prisoners of all means of expression" but bars communication only with a limited class of prisoners who give particular cause for concern. Turner, 482 U.S. at 92. That is equally the case here: The policy bars prisoners from possessing a limited class of music that rationally gives prisons particular cause for concern.

Mr. Herlein cites two possible alternative policies that he claims will entail at most only de minimis costs: Limiting an inmate to the possession of 20 tapes, whether or not they have a warning label, and individually reviewing all tapes to determine if they present a risk. The defendants contend that the first alternative not only does not accommodate their asserted penological objective but in fact undermines it. We agree. If the problem is exposure to explicit lyrics, then allowing

each inmate to have up to 20 tapes with such lyrics accomplishes very little. The defendants further contend that the second alternative would require significant resources, and thus involve more than de minimis cost. We agree again: Individual review would require a significant amount of staff time for listening to tapes and would still present a substantial risk that harmful material would escape review. See Turner, 482 U.S. at 93. These costs are certainly more than de minimis.

Finally, it is clear to us that the accommodation of Mr. Herlein's asserted right might have a significant "ripple effect," see id. at 90, on guards, inmates, and the allocation of resources at the prison. If the right were accommodated by reviewing tapes individually, that would significantly affect guards and resources by forcing prison officials to spend time reviewing tapes; if prisoners were allowed to possess tapes with explicit lyrics, that would run the risk of creating threats to the security of the prison.

### III.

In sum, we believe that the ban on the possession of tapes with labels that warn of explicit lyrics is reasonably related to the legitimate penological objective of maintaining prison security. There is a rational connection between the policy and the government interest, Mr. Herlein has significant alternative means of exercising his asserted right, there are no alternative policies to accommodate Mr. Herlein that involve only a de minimis cost, and the proposed alternatives may present the threat of a significant ripple effect on guards, prisoners, and resources at MPCF.

Furthermore, we believe that the Supreme Court's holding in Turner requires the result that we reach. The alleged constitutional infirmity of the ban on tapes with warning labels is its overbreadth, but we believe that the scope of the ban on inmate-to-inmate correspondence that was upheld in Turner was far more pronounced than the one here. The letters between inmates might have concerned any number of harmless topics, while tapes with warning labels have at least been previously judged

to have potentially disruptive content.  The challenged policy therefore does not violate the First Amendment.

IV.

For the reasons stated, we reverse the judgment of the trial court.

A true copy.

      Attest:

           CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.