# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

Nos. 02-1279/1449
_____

| | | |
|---|---|---|
| George Goff, | * | |
| | * | |
| Plaintiff - | * | |
| Appellee/Cross-Appellant, | * | |
| | * | |
| Tom Kane, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| William Barbee, | * | Appeals from the United States |
| | * | District Court for the |
| Plaintiff - | * | Southern District of Iowa. |
| Appellee/Cross-Appellant, | * | |
| | * | |
| Richard G. Shawhan, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| Jeff Winters, Tom Yarges, | * | |
| | * | |
| Plaintiffs - | * | |
| Appellees/Cross-Appellants, | * | |
| | * | |
| Lawrence Gladson, Kris Johnson, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| James Hall, | * | |
| | * | |
| Plaintiff - | * | |
| Appellee/Cross-Appellant, | * | |

|                                                  |   |
|--------------------------------------------------|---|
|                                                  | * |
| Ronnie T. Dunbar, Michael Rinehart, Wayne Berry, Jerry Sumpter, Steve Ragan, | * |
|                                                  | * |
|                                                  | * |
|                                                  | * |
|     Plaintiffs,                                  | * |
|                                                  | * |
| Michael Dean Gunn, Jr.,                          | * |
|                                                  | * |
|     Plaintiff - Appellee/Cross-Appellant,        | * |
|                                                  | * |
|                                                  | * |
| Timothy M. Jacobson,                             | * |
|                                                  | * |
|     Plaintiff,                                   | * |
|                                                  | * |
| Arthur Alan Poyner,                              | * |
|                                                  | * |
|     Plaintiff - Appellee/Cross-Appellant,        | * |
|                                                  | * |
|                                                  | * |
| Casey Gray, Tim Thompson, Randy Jones,           | * |
|                                                  | * |
|                                                  | * |
|     Plaintiffs,                                  | * |
|                                                  | * |
| Jon J. King, Adam M. Tanner, Sam Archer,         | * |
|                                                  | * |
|                                                  | * |
|     Plaintiffs - Appellees/Cross-Appellants,     | * |
|                                                  | * |
|                                                  | * |
| Bryan Keller, Frankie Sutton, Jeff Hass,         | * |
|                                                  | * |
|                                                  | * |
|     Plaintiffs,                                  | * |
|                                                  | * |

Michael L. O'Donnell, Patrick Cupples, Jim Dorsey, Jeffrey K. Ragland,

  Plaintiffs - Appellees/Cross-Appellants,

  v.

Leonard Graves, Warden; Bernard Eaves (added per pleading filed 9/9/98, Defs' Status Report); James Helling (added per pleading filed 9/9/98, Defs' Status Report),

  Defendants - Appellants/Cross-Appellees.

John Doe,

  Intervenor - Intervenor on Appeal.

\*

      _____

Submitted:  October 24, 2003

Filed:   March 30, 2004   **(Corrected 4/1/04)**

      _____

Before RILEY, BOWMAN, and SMITH, Circuit Judges.

      _____

BOWMAN, Circuit Judge.

  Plaintiffs are inmates at the Iowa State Penitentiary (ISP) in Fort Madison, Iowa.  They all claim to be members of the Church of the New Song (CONS) at ISP. CONS was founded in the early 1970s by a federal prisoner named Harry Theriault.

Though Theriault testified that CONS was initially established as a "game," Theriault v. Carlson, 339 F. Supp. 375, 377 (N.D. Ga. 1972), vacated, 495 F.2d 390 (5th Cir. 1974), in that case CONS was recognized as a religion protected by the First Amendment. After a "trial run" in federal penal institutions in Georgia and Texas, however, a federal district court in Texas determined that CONS was "not . . . a religion, but rather . . . a masquerade designed to obtain First Amendment protection for acts which otherwise would be unlawful and/or reasonably disallowed by the various prison authorities but for the attempts . . . to classify them as 'religious' and, therefore, presumably protected by the First Amendment." Theriault v. Silber, 453 F. Supp. 254, 260, 261 (W.D. Tex.), appeal dismissed, 579 F.2d 302 (5th Cir. 1978), cert. denied, 440 U.S. 917 (1979). In contrast, this Court in 1974 recognized CONS as a religion protected by the First Amendment and upheld a district court's order mandating its equal treatment with other religions at the prison. Remmers v. Brewer, 494 F.2d 1277 (8th Cir.) (per curiam), aff'g 361 F. Supp. 537 (S.D. Iowa 1973), cert. denied, 419 U.S. 1012 (1974).[1] Because of the Remmers decision, we suspend disbelief and proceed on the assumption, mandated by Remmers, that CONS is a religion.

The current controversy arose when ISP officials refused to permit food trays prepared for CONS' "celebration of life" banquet to be taken to CONS members who were in lock-up at the time of the banquet. Plaintiffs brought suit under 42 U.S.C. § 1983 (2000) claiming that ISP officials had violated their First Amendment rights and were in contempt of the decree set forth in Remmers. Defendants, all prison officials, counterclaimed and sought a declaratory judgment to prevent plaintiffs from

---

[1]We note that in Remmers the district court relied heavily on the Georgia federal district court's opinion in Theriault v. Carlson, 339 F. Supp. 375, 377 (N.D. Ga. 1972), vacated, 495 F.2d 390 (5th Cir. 1974). At the time our Court affirmed the district court's decision in Remmers, Theriault had not yet been vacated by the Fifth Circuit.

-4-

participating in CONS activities.[2]  The District Court denied the counterclaim and entered an order requiring defendants to permit CONS inmates in lock-up to receive trays of food from the banquet.  Defendants appeal both the entry of the order and the denial of declaratory relief.  Plaintiffs cross-appeal the District Court's decision to allow certain evidence to be admitted under seal and to enter an order protective of confidential informants.

## I.

In order to present a valid First Amendment claim against ISP officials, plaintiffs have the burden of establishing that the alleged religious belief or ritual in question—here the receipt of food from a feast for the "celebration of life"—is based on a teaching of the CONS religion, that their belief in the teaching is sincerely held, and that the governmental action in question actually infringes upon the individual prisoners' free exercise of this belief.  Hamilton v. Schriro, 74 F.3d 1545, 1550 (8th Cir.), cert. denied, 519 U.S. 874 (1996).  In its first order, the District Court found that the "celebration of life" feast was rooted in religion and thus was a religious belief protected under the First Amendment.  Our review of such a finding is for clear error.  Iron Eyes v. Henry, 907 F.2d 810, 813 (8th Cir. 1990).  Because there is insufficient evidence in the record to show that CONS instructs its adherents to hold such a feast, we conclude the District Court clearly erred in finding that the requirement of a feast for the "celebration of life" is a belief rooted in the CONS religion.

The record is filled with conflicting testimony by plaintiffs regarding the significance of the "celebration of life" feast in the CONS religion.  Plaintiffs first

---

[2]Defendants have not asserted a claim that Remmers should be overruled, even though new evidence appears to be available to show that CONS is a sham religion that exists only in the prison context and serves as a cover for gang activity.

claimed that a feast was required for "a Spring Celebration in honor of nature's renewal of life." (Appellants' App. at 61). Plaintiffs then asserted that the "celebration of life" commemorated the day on which the CONS was founded. Finally, plaintiffs contended that it was one and the same as the Sacred Unity Feast referenced in the Paratestament, a partial text of which is the sole written statement of CONS theology and ritual that the record in this case contains.[3] Given plaintiffs' conflicting accounts of the meaning of the celebration, it is difficult to credit the claim that the "celebration of life" feast is rooted in the CONS religion. The District Court's finding that it was so rooted was premised upon its clearly erroneous subsidiary finding that the celebration has direct support in the Paratestament. The court arrived at this finding by accepting plaintiffs' argument that the "celebration of life" feast is one and the same as the Sacred Unity Feast.

Having read the portions of the Paratestament that the record on appeal contains with some care, we conclude that without doubt the Sacred Unity Feast is not one and the same as the "celebration of life" feast, which all sides appear to agree is not mentioned as such in the Paratestament. According to the Paratestament, after "the [h]undred and forty-four thousand Revelation ministers have been sealed as prophesied" there will "be held a supper of the great God." (Id. at 240). It is only <u>after</u> the sealing[4] of these thousands of Revelation ministers that the Sacred Unity Feast is to become an annual occurrence: "After this, each year on the same date the Seminary of the Fountainhead[5] in all purlieus will hold the Annual Sacred Unity Feast . . . ." (Id. at 241). Plaintiffs point to this reference to the Sacred Unity Feast as support for their annual "celebration of life," but it is apparent that the Sacred Unity

---

[3]Indeed, the record on appeal contains only thirteen pages of the Paratestament. Internal page numbers suggest the entire document is considerably longer.

[4]We do not pause to delve into the meaning of "sealing" in this context.

[5]Similarly, we do not pause to inquire into the makeup of the "Seminary."

Feast is to be held only after the hundred and forty-four thousand Revelation ministers have been sealed. There is no evidence to show that this condition precedent has been satisfied. Inasmuch as the "celebration of life" is not mentioned anywhere in any CONS text to which our attention has been directed, partaking of a banquet for the "celebration of life" cannot be regarded as the exercise of a prescribed ritual of the CONS religion. Accordingly, the prison officials did not violate the plaintiffs' First Amendment rights by denying banquet trays to CONS members in lock-up. If a sincerely-held belief was implicated, it was not a belief grounded in CONS theology or its prescribed rituals as revealed by the materials the parties have put forward for our examination.

Even assuming arguendo that CONS somehow ordains a special "celebration of life" banquet, ISP's ban on providing trays of food to CONS members in lock-up does not violate any prisoner's free-exercise rights. Prison regulations may infringe upon prisoners' constitutional rights so long as such regulations are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987). There must be a rational connection between the challenged regulation and the interest put forth to justify it. Id. Three other relevant factors are (1) the continued availability of other means of exercising the right, (2) the effect that accommodation of the right would have on other prisoners, on prison staff, and on prison resources, and (3) the existence of ready alternatives to the challenged regulation. Id. at 90. We review de novo a district court's application of Turner to the facts before it. Iron Eyes, 907 F.2d at 813. We must accord great deference to the judgment of prison officials, particularly with respect to decisions that implicate institutional security. Turner, 482 U.S. at 84–85; Iron Eyes, 907 F.2d at 812.

Defendants argue that they prohibited special trays of food from being taken into the lock-up unit in order to keep contraband out of the unit. A security director at the prison testified that health regulations prevented staff from thoroughly searching the food trays to ensure that they were not being used to deliver contraband.

The concern about contraband is particularly acute with respect to banquet food for the "celebration of life" because CONS members have previously sent contraband into the lock-up unit through a variety of illicit methods. We have recognized institutional security as "the most compelling governmental interest in a prison setting." Ochs v. Thalacker, 90 F.3d 293, 296 (8th Cir. 1996). In the present case, there is a rational connection between the ban on permitting food trays from the CONS banquet to be taken to CONS members in lock-up and the governmental interest in maintaining prison security by adopting measures designed to keep contraband items out of the lock-up unit.

Similarly, the other three Turner factors support the finding that the ban was reasonably related to the legitimate penological interest of preserving institutional security. First, although the District Court found that denying trays of banquet food to CONS members in lock-up "effectively denies them any opportunity to participate in the Celebration of Life feast," the Court framed the issue too narrowly. Thus, its finding misses the point. The critical question for Turner purposes is whether the prison officials' actions deny prisoners their free-exercise rights without leaving open sufficient alternative avenues for religious exercise. See, e.g., Iron Eyes, 907 F.2d at 815 (noting that Turner balance favors prison officials when regulation does not preclude inmates from practicing at least some of the tenets of their religion). There is nothing in the record showing that CONS mandates any particular menu for the "celebration of life" feast, so lock-up inmates apparently can commemorate the event with their ordinary prison meals. Furthermore, members in lock-up continue to be able to practice other CONS beliefs despite not being able to partake of the banquet food.

Turning to another Turner factor, permitting special trays of food to be taken to lock-up burdens prison resources by increasing the demands on staff time because of the necessity of searching such trays for contraband. Finally, there do not exist ready alternatives to the challenged ban. Thorough searches of the banquet food

would not only burden prison staff but also might run afoul of health regulations. Additionally, there is the inherent difficulty of searching trays of food thoroughly for small items of contraband hidden in the food itself. Moreover, banquet foods may by their very nature contain contraband items such as bones, which are banned from the lock-up unit because of the danger they may be fashioned into weapons.

Under our deferential review of prison administrators' actions, all of the Turner factors favor the conclusion that the ban on delivering food trays from the "celebration of life" banquet to CONS members in lock-up is reasonably related to legitimate penological interests, and thus there is no impermissible infringement on the free-exercise rights of any CONS member. The denial of "celebration of life" food trays to CONS adherents in lock-up therefore does not violate the Remmers injunction.

## II.

We deal next with plaintiffs' challenge to the District Court's decision to allow certain evidence, including depositions from confidential prison informants, to be received into evidence under seal and pursuant to a protective order that barred disclosure of the substance of the testimony or the deponents' identities to plaintiffs and the public. We are satisfied the court did not abuse its discretion in this regard. Any right of access to records from civil proceedings, if it exists (a question we never have decided), is not absolute. Webster Groves Sch. Dist. v. Pulitzer Publ'g Co., 898 F.2d 1371, 1376 (8th Cir. 1990); see also In re Search Warrant for Secretarial Area Outside Office of Gunn, 855 F.2d 569, 574 (8th Cir. 1988). A compelling governmental interest permits a court to take evidence under seal as long as the court makes specific findings regarding the necessity of such a step. Gunn, 855 F.2d at 574. Here, the District Court found that the preservation of institutional security and the protection of confidential informants from acts of retaliation for giving evidence

were compelling interests necessitating the decision to issue a protective order and seal portions of the record. Cf. Brown v. Kuhlmann, 142 F.3d 529, 537–38 (2d Cir. 1998) (recognizing preservation of undercover officer's safety as a compelling interest sufficient to permit closure of courtroom during officer's testimony). We note that only a minor portion of the evidence has been sealed as a result of the challenged ruling. Furthermore, this evidence was sealed only after it was determined that redaction would be insufficient to protect prison security and informant safety. Accordingly, we sustain the challenged ruling. Cf. Rodriguez v. Schneider, No. 00-0307, 2003 U.S. App. LEXIS 2458 (2d Cir. Feb. 11, 2003) (prison inmate not entitled to information regarding confidential informants in order to buttress a retaliation claim under § 1983).

## III.

Finally, we turn to defendants' claim that the District Court's dismissal of their request for declaratory relief should be reversed. Specifically, the defendants' counterclaim asked the court for a declaration that would allow prison officials to bar all plaintiffs from participating in CONS services, study groups, lay ministry, and banquets. We find no abuse of discretion in the District Court's dismissal of the requested declaration. First, such a declaration would likely fail under Turner because of its breadth; it would leave inmates with few avenues for the free exercise of the CONS religion. Cf. Ward v. Walsh, 1 F.3d 873, 878 (9th Cir. 1993) (noting that leaving an inmate with the ability to pray privately and no other means of exercising his beliefs probably would not be sufficient under Turner to constitute adequate alternative methods of exercising the right to religion), cert. denied, 510 U.S. 1192 (1994). Second, and alone dispositive of the counterclaim, we believe that such a broad declaration cannot issue so long as our Court's decision in Remmers, which holds that CONS is a religion entitled to protection under the First Amendment, continues to be the law of our Circuit. Prison officials may not bypass Remmers by asking for this form of declaratory relief. The proper procedural

mechanism for attacking <u>Remmers</u> is to bring a motion to dissolve the injunction entered in that case. <u>See</u> Fed. R. Civ. P. 60(b)(5). This Court specifically approved that portion of the district court's decision in <u>Remmers</u> that left the finding that CONS is a religion protected under the First Amendment subject to later challenge by ISP officials. <u>Remmers</u>, 494 F.2d at 1278 n.1 ("As the trial court noted, should it subsequently appear that [CONS] is a hoax and front . . . that eventually can be dealt with by both the prison administration and the court.").

We note that ISP officials have previously attempted to reopen the issue of whether CONS is a religion entitled to First Amendment protection, but these attempts were rejected by the district court, which determined that ISP officials had not presented sufficient evidence that CONS was a "hoax and front" at ISP. <u>See</u> <u>Loney v. Scurr</u>, 474 F. Supp. 1186 (S.D. Iowa 1979); <u>Remmers v. Brewer</u>, 396 F. Supp. 145 (S.D. Iowa 1975), <u>aff'd</u>, 529 F.2d 656 (8th Cir. 1976). Defendant prison officials now appear to have gathered substantial evidence that CONS functions not as a religious organization but as a racist prison gang within ISP. Such evidence obviously would be highly relevant to a determination regarding the continued validity of the <u>Remmers</u> decision.[6]

---

[6]ISP officials have designated CONS as a "security threat group" within the prison. (Appellants' App. at 119, 255). Such a group is defined to be "any ongoing organization, group, or association that threatens or coerces or harasses others and/or participates in or encourages illegal activity." (Id.) We note that the Third Circuit has recently upheld the authority of prison administrators to designate purportedly religious organizations as security threat groups and limit their activities within prison. <u>Fraise v. Terhune</u>, 283 F.3d 506, 509 (3d Cir. 2002); <u>see also</u> <u>In re Long Term Admin. Segregation of Inmates Designated as Five Percenters (Mickle v. Moore)</u>, 174 F.3d 464, 466 (4th Cir.), <u>cert. denied</u>, 528 U.S. 874 (1999).

## IV.

In sum, we reverse the District Court's order requiring prison officials to permit food trays from the "celebration of life" banquet to be taken to CONS members in lock-up. We affirm the District Court's denial of defendants' counterclaim for declaratory relief and the District Court's decision to partially seal the record and to issue a protective order.

_____