# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1455

_____

Winston Holloway,                              *
                                               *
    Plaintiff - Appellant,            *
                                               *
v.                                             *
                                               *  Appeal from the United States
Benny Magness, Chairman, ADC                   *  District Court for the
Board; Ray Hobbs, Director, Arkansas           *  Eastern District of Arkansas.
Department of Correction; Rex Gaylon           *
Lay, Warden, Cummins Unit, ADC;                *
Global Tel*Link,                               *
                                               *
    Defendants - Appellees.           *

_____

Submitted: September 20, 2011
Filed:  February 2, 2012

_____

Before LOKEN, BEAM, and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Under a contract with the Arkansas Department of Correction (ADC), Global Tel*Link (GTL) provides telephone service to ADC inmates and pays ADC 45% of GTL's gross revenues. Inmate Winston Holloway commenced this 42 U.S.C. § 1983 action against GTL and ADC officials alleging, as relevant here, that the elevated phone charges he must pay by reason of the contract violate his First Amendment free speech rights because he would call family members outside the prison more

frequently if calls were less expensive.[1]  He seeks to enjoin ADC from receiving, and GTL from paying, the 45% "commissions."  Declining to adopt a magistrate judge's contrary recommendation, the district court[2] granted summary judgment dismissing this First Amendment claim.  Holloway v. Magness, 2011 WL 204891 (E.D. Ark. Jan. 21, 2011).  Holloway appeals.  Reviewing the First Amendment issues and the grant of summary judgment *de novo*, we affirm.  See Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 812 (8th Cir. 2008) (standard of review).

ADC inmates may not receive telephone calls from family members or friends and may not make calls using prepaid phone cards or cellular phones.  Instead, they are allowed to make collect calls using funds deposited into their prepaid call accounts.  The contract at issue provides that GTL is the exclusive provider of this phone service, charging inmates for each collect call on a surcharge and per minute basis.  The contract also authorizes GTL to collect a fee equal to 19% of all funds deposited into the prepaid accounts.  GTL pays 45% of its gross revenues under the contract to ADC.  The commission payments to ADC have totaled more than $2 million per year.  As GTL pays all costs associated with providing telephone service to inmates, ADC uses these commission revenues for other prison expenses, such as prison security and facility maintenance.

As the district court explained in detail, Arkansas is one of many States that have granted private companies exclusive rights to provide telephone service to inmates in exchange for a percentage of the revenues generated by that service.

---

[1]This claim does not involve inmate telephone calls to and from attorneys and other First-Amendment-protected communications that may be necessary to ensure an inmate's reasonable access to the courts.

[2]The Honorable J. Leon Holmes, Chief Judge of the United States District Court for the Eastern District of Arkansas.

These contracts have been criticized by the Federal Communications Commission and by others because they allegedly create, for both parties, an unrestrained incentive to increase the cost of telephone service to inmates. Numerous lawsuits have challenged the practice, asserting claims under the Telecommunications Act of 1996, state and federal antitrust laws, state consumer protection and unfair trade practices acts, state constitutional provisions, the First Amendment, and the takings, due process, and equal protection clauses of the federal Constitution. No court has held any contract between a telephone company and a prison system unlawful under any of these theories. See Holloway, 2011 WL 204891, at *4-5. At least three appellate courts have rejected the First Amendment claim Holloway asserts in this case. Arsberry v. Illinois, 244 F.3d 558 (7th Cir.) (50% commission), cert. denied, 534 U.S. 1062 (2001); Johnson v. California, 207 F.3d 650 (9th Cir. 2000); Walton v. N.Y. State Dep't of Corr. Servs., 921 N.E.2d 145 (N.Y. 2009) (57.5% commission).

Holloway's challenge is based upon three propositions: (1) Inmates have a First Amendment right to communicate with persons outside the prison. (2) Because ADC has chosen to provide telephone service to inmates, any limitation on the use of that service is subject to First Amendment scrutiny. (3) Because ADC incurs no cost in providing telephone service under the contract, the 45% commission is an arbitrary revenue-raising measure that is not reasonably related to legitimate penological interests and therefore infringes his First Amendment rights under either the balancing test of Turner v. Safley, 482 U.S. 78 (1987), or a more heightened standard of scrutiny that should be applied to this issue.

Support for the first proposition may be found in the dicta of many reported decisions. See, e.g., Procunier v. Martinez, 416 U.S. 396 (1974); Thornburgh v. Abbott, 490 U.S. 401 (1981); Benzel v. Grammer, 869 F.2d 1105, 1108 (8th Cir.) ("in some instances prison inmates may have a right to use the telephone for communication with relatives and friends"), cert. denied, 493 U.S. 895 (1989); Watts

-3-

v. Brewer, 588 F.2d 646, 649-50 (8th Cir. 1978). But it is a perilous over-generalization. The nineteenth century saw the rise of prison systems that "placed maximum emphasis on preventing the prisoners from communicating with anyone else." Overton v. Bazzetta, 539 U.S. 126, 143 (2003) (Thomas, J., concurring) (quotation omitted). Whether a prison system that totally isolated inmates from the outside world, with express statutory authority to do so, would pass constitutional muster today has never been litigated. Fortunately, modern prison administrators believe that properly controlled inmate contacts with persons outside the prison walls such as family members serve important interests, including improved prison security and inmate rehabilitation, as well as the inmates' First Amendment interests. Thus, the reported cases deal with challenges to a variety of restrictions and limitations on inmate contacts that are otherwise encouraged. In other words, the extent of inmates' First Amendment right to communicate with the outside world is a fact-intensive universe. See, e.g., Roy v. Stanley, 110 Fed. App'x 139, 141 (1st Cir. 2004) (unpublished) ("Prisoners have no per se constitutional right to use a telephone."); Valdez v. Rosenbaum, 302 F.3d 1039, 1048 (9th Cir. 2002), cert. denied, 538 U.S. 1047 (2003).

The second proposition is doubtless true, but it does not address the issue before us. It is a corollary of the more general First Amendment principle that, *if* the government chooses to create a public forum for speech, whether a general or a limited public forum, it may not unreasonably restrict the public's use of that forum. But that principle does not include a mandate to *create* any particular type of public forum, such as providing inmates with telephone service, nor does it address the terms upon which government as proprietor may recover the costs of creating the forum, including a reasonable return on its investment. Cf. Arsberry, 244 F.3d at 564-65.

These general observations bring the fallacy in Holloway's third proposition into sharper focus. Just as ADC had no First Amendment obligation to provide any

-4-

telephone service, it had no obligation to provide that service at a particular cost to users. The issue as framed by Holloway focuses on ADC's 45% "commission" as a discrete component of his phone costs. It is discrete in an accounting sense, probably due to the complexities of telephone company regulation. But it is wrong to say that the commissions are a free revenue stream to ADC. These revenues are a portion of the total cost of the telephone service ADC chose to provide. To illustrate this important distinction, suppose ADC had built and managed the phone system itself and charged exactly what inmates now pay GTL for each call. The impact on the inmates' First Amendment rights would be exactly the same, which means that Holloway is in effect arguing that the First Amendment prohibited ADC from making this much "profit" from a service it chose to provide to facilitate inmate speech. The implications of this theory are unprecedented and without support in the reported cases. The Constitution does not prohibit charging prisoners for essential prison services, at least in the absence of a showing that the result is a severe deprivation of a fundamental right. See Christiansen v. Clarke, 147 F.3d 655, 657 (8th Cir.) (room and board), cert. denied, 525 U.S. 1023 (1998); Hershberger v. Scaletta, 33 F.3d 955, 957 (8th Cir. 1994) (postage for non-legal mail).

The answer is no different if we look at the contract commissions as a "restriction" on speech, rather than what they are, part of the total cost of facilitating speech. Because the Constitution "permits greater restriction of [First Amendment] rights in a prison than it would allow elsewhere," restrictive prison regulations are normally reviewed under the four-factor Turner test to determine whether they are "reasonably related to legitimate penological interests." Beard v. Banks, 548 U.S. 521, 528 (2006), quoting Turner, 482 U.S. at 87. The district court properly conducted a Turner review but correctly noted, "It is not at all clear that the Turner framework applies." Holloway, 2011 WL 204891, at *8.

The first Turner factor -- whether there is a reasonable relationship between the prison regulation and a legitimate penological interest -- does not readily fit when the First Amendment challenge involves, not a restriction on inmate speech, but rather the amount charged for a service that facilitates inmate speech. Obviously, there is a "valid, rational connection" between the legitimate government interest in providing telephone service, and determining what to charge for that service. Turner, 482 U.S. at 89. Likewise, the third and fourth Turner factors -- the impact of a restriction on guards and inmates and the presence or absence of alternative restrictions -- have little or no bearing on what inmates are charged for telephone service.

The second Turner factor -- whether alternative means of speaking remain open to inmates -- is relevant to this dispute. But the issue is not whether higher phone charges discourage speech, but rather "whether inmates have alternative means of exercising the constitutional right they seek to assert." Overton, 539 U.S. at 135. Alternatives to the type or amount of speech at issue "need not be ideal . . . they need only be available." Id.; see Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 130-31 (1977) (losing the cost advantages of bulk mail "does not fundamentally implicate *free speech* values"). Here, the record makes clear that ADC inmates retain many alternative means of communicating with family members and friends in the outside world -- personal visits and mail as well as use of the GTL telephone service. Holloway admitted that he speaks on the telephone with friends and family approximately two times per month. Nor does the record permit an inference that ADC's purpose in negotiating the contract was to restrict inmate speech.[3] Holloway simply failed to allege and prove facts showing a significant infringement of his right to communicate with the outside world. Indeed, he failed to show that the alleged restriction is unconstitutional under the heightened scrutiny standard he urges us to

---

[3]During the competitive bid process, ADC rejected GTL's proposal of a 55% commission to ADC because it imposed higher per-call charges for inmates.

adopt -- "whether the [contract] imposes a burden upon speech that is disproportionate in light of the other interests the government seeks to achieve." Ysursa v. Pocatello Educ. Ass'n, 555 U.S. 353, 367 (2009) (Breyer, J., concurring in part and dissenting in part).[4]

For these reasons, we affirm the judgment of the district court. We decline to consider GTL's alternative argument -- rejected by the district court -- that the primary jurisdiction and filed rate doctrines bar Holloway's First Amendment claim.

_____

---

[4]When acting outside the prison context, the government as proprietor is not subjected to heightened scrutiny in setting the charge for services it provides, but it "does not enjoy absolute freedom from First Amendment constraints." Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation, 322 F.3d 1298, 1308 (11th Cir. 2003) (en banc) (quotation omitted).