# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3682

_____

Cheryl Simpson

_Plaintiff - Appellant_

v.

County of Cape Girardeau, Missouri

_Defendant - Appellee_

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: September 20, 2017
Filed: January 2, 2018

_____

Before LOKEN, ARNOLD, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Cheryl Simpson brought a 42 U.S.C. § 1983 claim against the County of Cape Girardeau, Missouri ("**Cape Girardeau**"), alleging that the Cape Girardeau County Jail's postcard-only incoming-mail policy for non-privileged mail violated her First and Fourteenth Amendment rights by impermissibly restricting her ability to communicate with her son, Trey Simpson, who was then an inmate. At trial, Ms.

Simpson attempted to introduce incoming-mail policies from other institutions that permit inmates to receive multi-page letters in envelopes as evidence that Cape Girardeau's postcard-only policy was unreasonable. The district court[1] excluded those policies as irrelevant and held that the postcard-only policy did not violate Ms. Simpson's constitutional rights. We affirm, holding that the district court's exclusion of the other institutions' mail policies was harmless error and the postcard-only incoming-mail policy is constitutional.

## I. Background

When Trey Simpson was first imprisoned at Cape Girardeau County Jail, the jail had no restrictions on the length or number of letters that inmates received. Ms. Simpson wrote Trey several lengthy letters a week that included family photos, drawings by his nephew, and various pieces of personal information. On January 1, 2014, during Trey's imprisonment, Cape Girardeau implemented a new incoming-mail policy requiring non-privileged mail to be sent on postcards:

> All non-privileged correspondence **entering** the Jail Facility must be post cards [sic]
>> a) All postcards must be standard white postcards, no index cards or photographs.
>> b) Postcards must be no larger then [sic] 5" X 7".
>> c) Postcards will have their stamps removed and discarded prior to delivery to the inmate.
>> d) Postcards must be addressed with the return address clearly readable.

---

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

e) There will be no limit on how many postcards inmates can receive but inmates will be limited to ten postcards in their cell at any one time.

f) Unacceptable postcards will be returned to sender

    1) Defaced or altered postcards are unacceptable

    2) No plastic/wrappings on postcards.

    3) No labels or stickers will be accepted

    4) No postcards with watermarks or stains

    5) No postcards with bio-hazards, including lipsticks or perfumes

    6) No postcards depicting nudity, weapons, alcohol or gang references.

R. at 61.


Cape Girardeau's reasons for imposing the postcard-only policy were to reduce the risk of contraband entering the jail and to reduce the time that officers spent searching the mail. The other means of communication available to inmates at the time included fifteen-minute visits on Saturdays and collect phone calls that prisoners could place, costing $9.99 for ten minutes. After the new policy was implemented, Ms. Simpson could not fit as much writing on a single postcard as she could in a letter, so she wrote multiple postcards and numbered them so that Trey could read them in order. Ms. Simpson claims the postcards were confusing because they did not always arrive at the same time or in order and if there were more than ten postcards, Trey could not keep them all in his possession at once. Ms. Simpson also testified that limiting her writing to postcards changed the nature of her communications with her son because anyone would be able to read what she wrote, including postal employees.

Ms. Simpson filed suit against Cape Girardeau under § 1983, and on November 6, 2015, the parties appeared for a bench trial. The district court found that the four factors in <u>Turner v. Safley</u>, 482 U.S. 78, 89-91 (1987), applied to determine whether the postcard-only policy is constitutional. The court held that the first factor favored Cape Girardeau because safety and efficiency are legitimate penological concerns and scanning postcards is more efficient than opening envelopes and scanning multi-page letters. The court additionally found that the policy minimizes the possibility that contraband will be introduced into the jail. The court then determined that the second factor was neutral because though there were alternative ways to communicate with inmates, they are more expensive and less private.

Next the court held that the third factor favored Cape Girardeau because the policy saves time by allowing officers to check the mail faster and in turn use that time on other issues related to security. Finally, the court found that the fourth factor favored Cape Girardeau because returning to the previous mail policy that required the staff to open envelopes individually and to inspect the contents and scan multi-page letters would have more than a *de minimis* cost. Ms. Simpson attempted to introduce evidence of incoming-mail policies from several other jails and prisons, including the Federal Bureau of Prisons, to show there were alternative policies that would have no more than a *de minimis* cost to implement. The district court excluded these policies as irrelevant. Based on these findings, the court held that the postcard-only policy did not violate Ms. Simpson's constitutional rights.

## II. Excluded Policies

The first issue on appeal is whether the district court committed reversible error when it excluded as irrelevant evidence of incoming-mail policies from other institutions. We review evidentiary rulings for abuse of discretion and give "deference to the district judge who saw and heard the evidence." <u>United States v. Johnson</u>, 860 F.3d 1133, 1139 (8th Cir. 2017) (internal quotation marks omitted). A

court abuses its discretion when "a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 893 (8th Cir. 2013) (quoting Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir. 1984)). We will only reverse an improper evidentiary ruling if it affected a party's substantial rights or more than slightly influenced the verdict. Johnson, 860 F.3d at 1139. Further, "[w]e will not reverse a harmless error." Id.

Ms. Simpson argues that the district court committed reversible error because the Supreme Court has held that the policies of other correctional institutions are relevant in deciding whether a jail's policy violates a constitutional right and excluding the other institutions' incoming-mail policies prevented her from presenting relevant, substantive evidence showing that the postcard-only policy was unconstitutional. Cape Girardeau argues that the court did not abuse its discretion because: Ms. Simpson did not make an appropriate offer of proof to preserve the issue on appeal; she did not show how the policies were relevant or how their exclusion would be prejudicial; and considering the other prisons' policies would be a waste of time under Federal Rule of Evidence 403.

Assuming that the district court abused its discretion when it excluded the other institutions' policies, we only reverse the district court if the exclusion of the policies affected Ms. Simpson's substantial rights or if the ruling "had more than a slight influence on the verdict." Johnson, 860 F.3d at 1139 (internal quotation marks omitted). Here, though the district court excluded the policies from other institutions, it still considered Cape Girardeau's previous incoming-mail policy as an alternative policy. Cape Girardeau's previous policy does not meaningfully differ from the other institutions' incoming-mail policies. Cape Girardeau's previous policy and the other institutions' policies did not contain postcard-only restrictions, and all called for mail

inspections before the mail was delivered to the inmates. Because these policies are materially indistinguishable, the other institutions' policies would not have made a difference in the district court's analysis. Additionally, Ms. Simpson was able to adequately present evidence on the fourth Turner factor by presenting Cape Girardeau's previous policy as an alternative to the postcard-only policy. Therefore, Ms. Simpson's substantial rights were not affected, and the exclusion of the policies did not have an impact on the district court's decision. We hold that the exclusion, if error, was harmless.

### III. Constitutionality of Postcard-Only Policy

The second issue on appeal is whether Cape Girardeau's postcard-only policy is constitutional under Turner. We review the application of the Turner factors *de novo*. Iron Eyes v. Henry, 907 F.2d 810, 813 (8th Cir. 1990).

In Turner, the Supreme Court held that a prison regulation or action that restricts a prisoner's constitutional rights "is valid if it is reasonably related to legitimate penological interests."[2] 482 U.S. at 89. Turner established "four factors that courts should consider in making that determination": (1) "whether there is a 'valid rational connection' between the prison regulation and the government interest justifying it"; (2) "whether there is an alternative means available to the prison inmates to exercise the right"; (3) "whether an accommodation would have 'a significant "ripple effect"' on the guards, other inmates, and prison resources"; and (4) "whether there is an alternative that fully accommodates the prisoner 'at de

---

[2]In Thornburgh v. Abbott, the Supreme Court found that the Turner analysis applies to restrictions on the rights of inmates *and* outsiders, and "any attempt to forge separate standards for cases implicating the rights of outsiders is out of step" with the supporting cases the Court expressly relied on in Turner. Thornburgh, 490 U.S. 401, 410 n.9 (1989). Thus, the Turner factors apply even though Ms. Simpson, not Trey, brought the instant claim.

minimis cost to valid penological interests.'" <u>Murphy v. Mo. Dep't of Corr.</u>, 372 F.3d 979, 982-83 (8th Cir. 2004) (quoting <u>Turner</u>, 482 U.S. 89-90).

Ms. Simpson argues that the first factor favors her because Cape Girardeau is attempting to suppress expression, so the policy is not neutral. She further argues that the third and fourth factors weigh in her favor because Cape Girardeau has not presented sufficient evidence showing that the postcard-only policy significantly improved safety or efficiency; therefore, there would be no ripple effect if Cape Girardeau returned to a letter mail policy, and there are alternative mail policies that would have a *de minimis* cost to implement.

Cape Girardeau argues that the policy is neutral and rationally related to the jail's legitimate penological interests in limiting the amount of contraband entering the jail and in maintaining an efficiently run institution. Cape Girardeau then argues that the second factor weighs in its favor because Ms. Simpson can still send as many postcards as she wants, she can visit her son in person on Saturdays, and she can talk to her son on the phone. Cape Girardeau finally argues that the third and fourth factors weigh in its favor because the postcard-only policy saved the jail significant time and resources that are now allocated to the officers' other security duties and returning to a letter mail policy would have more than a *de minimis* cost.

*A. Valid Rational Connection*

The first <u>Turner</u> factor requires that Cape Girardeau's interests reflect legitimate, neutral governmental objectives, and "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." <u>Turner</u>, 482 U.S. at 89-90 (internal quotation marks omitted). "[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or

irrational." Id. Should we find a valid rational connection, we balance the remaining three factors. See id.

We have recognized institutional security as the most compelling government interest in a prison setting. Murphy, 372 F.3d at 983. Institutional efficiency is also a legitimate penological objective. See Barney v. Pulsipher, 143 F.3d 1299, 1313 n.17 (10th Cir. 1998). Lieutenant Todd Stevens of the Cape Girardeau County Sheriff's Office proposed the postcard-only policy and stated at trial that the purpose of the policy is to improve the security and efficiency of the jail. Ms. Simpson did not controvert this testimony. Thus, Cape Girardeau's stated objectives justifying the regulation appear rationally connected to legitimate governmental interests. See Murphy, 372 F.3d at 983; Barney, 143 F.3d at 1313 n.17.

The Supreme Court has stated that it is "important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression." Turner, 482 U.S. at 90. In Thornburgh, the Supreme Court found that when "prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are 'neutral' in the technical sense in which" that term was meant and used in Turner. 490 U.S. at 415-16. The policy at issue in Thornburgh stated that it was distinguishing between publications based on prison security, not content, so the Supreme Court found the prison's distinctions permissible. Id.; see also Human Rights Def. Ctr. v. Bezotte, No. 11-CV-13460, 2017 WL 1250683, at *7 (E.D. Mich. Mar. 31, 2017) (finding that the postcard-only policy was neutral because it applied to all persons). Similarly, Cape Girardeau implemented the postcard-only policy based on jail security and efficiency, not based on the content of the mail itself, and the policy applied to all non-legal, incoming mail. Therefore, we find that the postcard-only policy is neutral.

Cape Girardeau must also demonstrate a logical connection between its goals and the regulation. Turner, 482 U.S. at 89-90. If there is no logical connection, then the regulation is arbitrary and unreasonable and cannot be sustained. Id. Though it may bolster the rationale for a postcard-only policy, Cape Girardeau need not present evidence of previous incidents stemming from the receipt by inmates of letter mail—"prison officials may also seek to prevent harm that has yet to occur." Murchison v. Rogers, 779 F.3d 882, 890 (8th Cir. 2015). Moreover, Turner does not require "actual proof that a legitimate interest will be furthered by the challenged policy. The connection between the two need only be objectively rational." Herlein v. Higgins, 172 F.3d 1089, 1091 (8th Cir. 1999).

There is a common sense connection between the goal of reducing contraband in the jail and Cape Girardeau's postcard-only incoming mail policy. See, e.g., Prison Legal News v. Chapman, 44 F. Supp. 3d 1289, 1299 (M.D. Ga. 2014). Ms. Simpson argues that there is no valid rational connection between jail security and a postcard-only policy because there have been no previous incidents of contraband getting into the jail under Cape Girardeau's previous incoming-mail policy. However, that is not the test. Cape Girardeau may seek to prevent harm that has yet to occur and, as a result, is not required to provide evidence of previous incidents of contraband reaching inmates through the mail in order to adopt a postcard-only incoming mail regulation. See Murchison, 779 F.3d at 890. Cape Girardeau does not even have to show that its interests will actually be furthered by the policy, only that there is a rational relationship between the policy and the objectives. See Herlein, 172 F.3d at 1091. It is reasonable to believe that contraband could be smuggled into the jail via mail. Furthermore, it is a rational concept that limiting non-privileged mail to postcards could reduce the risk of contraband being introduced into the jail through the mail. Accordingly, we find that Cape Girardeau's postcard-only policy is rationally connected to the legitimate penological objective of jail safety.

There is also a common-sense connection between a postcard-only policy and promoting efficiency.  See Prison Legal News v. Columbia Cnty., 942 F. Supp. 2d 1068, 1084 (D. Or. 2013).  Ms. Simpson argues that Cape Girardeau has not presented evidence that the postcard-only policy has made the jail more efficient.  Again, Cape Girardeau does not have to show that efficiency was or will actually be furthered.  Herlein, 172 F.3d at 1091.  It only needs to show that rationally the policy could lead to more efficiency.  Id.  Removing the need to open envelopes and shuffle through pages of letters could reasonably allow officers to spend less time and energy checking the mail for contraband.  See, e.g., Chapman, 44 F. Supp. 3d at 1299. Therefore, we find that Cape Girardeau's policy is rationally related to the legitimate penological interest of an efficiently run institution.  Because the postcard-only policy is neutral and rationally related to both security and efficiency, the first Turner factor weighs in favor of Cape Girardeau.

### B. Alternative Means to Exercise the Right

The second Turner factor asks "whether there are alternative means of exercising the right that remain open to prison inmates." Turner, 482 U.S. at 90.  If other avenues are available for the inmate to exercise the asserted right, "courts should be particularly conscious of the measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation."  Id. (alteration in the original) (internal citations omitted).  "Alternatives to the type or amount of speech at issue 'need not be ideal . . . they need only be available.'"  Holloway v. Magness, 666 F.3d 1076, 1080 (8th Cir. 2012) (alteration in the original) (quoting Overton v. Bazzetta, 539 U.S. 126, 135 (2003)).

In Ortiz v. Fort Dodge Correctional Facility, a prisoner was not permitted to write or receive letters written in Spanish from family members who lived in the United States.  368 F.3d 1024, 1025-26 (8th Cir. 2004).  The inmate filed suit, claiming that the policy violated his First Amendment rights. Id. at 1026.  We held

-10-

that phone calls and the ability to receive visitors in person were adequate alternatives to writing and receiving letters from his family members. Id. at 1027. Like in Ortiz, Ms. Simpson's ability to communicate with her son has not been completely foreclosed. She may still send Trey as many postcards as she likes. She may also receive collect calls from Trey and visit him on Saturdays. As we have previously held, the alternatives to letter writing need not be ideal, they need only be available, see Holloway, 666 F.3d at 1080, and alternative means of communication are available to Ms. Simpson. Accordingly, we find that the second Turner factor weighs in favor of Cape Girardeau.

### C. Significant Ripple Effect

The third Turner factor considers what impact the "accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Turner, 482 U.S. at 90. We give particular deference "to the informed discretion of corrections officials" if the "accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff." Id.

Accommodating Ms. Simpson's demands would cause a significant reallocation of Cape Girardeau's financial resources and would interfere with its ability to maintain institutional security and efficiency; therefore, we are particularly deferential to Cape Girardeau's regulatory judgments. See Overton, 539 U.S. at 135. Prison officials testified at trial that though there were no written records of the time saved sorting the mail, the process had become more efficient and officers were able to allocate the time saved to other security concerns. Requiring Cape Girardeau to abandon the postcard-only policy would force the jail to dedicate more time and resources to searching the mail, which would detract from the officers' other duties related to security and inmate welfare. Furthermore, returning to a letter mail policy would increase the risk that contraband would reach the inmates, creating a greater

-11-

threat to institutional security. The threatened impact to Cape Girardeau's institutional efficiency and security is sufficient to convince us that returning to a letter mail policy would have a significant ripple effect on the inmates and jail staff. Therefore, we find that the third Turner factor weighs in favor of Cape Girardeau.

*D. Alternative Policies*

The final Turner factor asks whether there are any ready alternatives to the policy. Turner, 482 U.S. at 90-91. "The absence of ready alternatives is evidence of the reasonableness of a prison regulation"; however, "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." Id. The policy does not have to be the least restrictive alternative, "but if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." Id.

Cape Girardeau's previous mail policy and the other incoming-mail policies show that there are alternatives to the postcard-only policy. The question, then, is whether the cost of returning to a letter mail policy would have a greater than *de minimis* cost to the jail. See id. We think that it would as far as institutional security is concerned. We reemphasize that "institutional security is 'the most compelling legitimate government interest in a prison setting.'" Murphy, 372 F.3d at 983 (quoting Goff v. Graves, 362 F.3d 543, 549 (8th Cir. 2004)). Thus we are highly deferential "to the judgment and expertise of prison officials." Id.

As we concluded earlier, there is a common sense connection between restricting letter mail and limiting the amount of contraband that enters a jail. Cape Girardeau does not need to wait until contraband enters the jail through non-privileged letter mail to restrict it. See Murchison, 779 F.3d at 890. Furthermore, we

-12-

do not need actual proof that institutional security will be advanced by the policy, as Ms. Simpson argues. See Herlein, 172 F.3d at 1091. The risk of contraband entering the facility alone is more than a *de minimis* cost, and returning to a letter mail policy would force Cape Girardeau to incur that cost. Cape Girardeau must be able to protect inmates and staff from the security threats of contraband in the jail. As the jail officials are better positioned to understand the institutional security needs of Cape Girardeau County Jail, we defer to their judgment. Accordingly, we find that returning to a letter mail policy would have more than a *de minimis* cost to institutional security.

Because all three of the balancing Turner factors favor Cape Girardeau, we hold that Cape Girardeau's postcard-only incoming-mail policy is constitutional. We note, however, that our holding in this case is narrow, as a Turner analysis is a fact-intensive inquiry requiring careful examination of the policies and institutions at issue in each case.

## IV. Conclusion

For the foregoing reasons, we affirm the district court on both issues.

_____