# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-2096

_____

Human Rights Defense Center

*Plaintiff - Appellant*

v.

Baxter County Arkansas

*Defendant - Appellee*

------------------------------

Americans for Prosperity; Arch City Defenders; Center for Appellate Litigation;
Clark-Fox Family Foundation; Free Minds Book Club & Writing Workshop; Just
Detention International; Michigan State University College of Law's Civil Rights
Clinic; R Street Institute; Roderick and Solange MacArthur Justice Center;
Rutherford Institute; Uptown People's Law Center

*Amici on Behalf of Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Harrison

_____

Submitted: June 17, 2020
Filed: June 8, 2021
[Published]

_____

Before LOKEN and GRASZ, Circuit Judges, and PITLYK,[1] District Judge.
_____

PER CURIAM.

This case, which pits First Amendment free-speech rights of a publisher against important correctional-security interests, presents a vestigial dilemma from the pre-digital communication era. Technology may soon assign the issue to relic status. But, in the meantime, our task is to answer the question of whether a publisher's constitutional rights have been infringed upon by a prison policy limiting most communication with inmates to postcards—in a facility with no electronic kiosk or similar device capable of communicating the publisher's materials.

In January 2012, the Sheriff of Baxter County, Arkansas, initiated a new policy regulating incoming mail to inmates and detainees at the Baxter County Jail and Detention Center ("Jail"). The policy provided "[w]ith the exception of privileged mail or legal mail, the only type of mail the jail staff are permitted to accept for the inmate is post cards. Other mail will be marked for return to sender."

Between August 2016 and May 2017, the Human Rights Defense Center ("HRDC"), a non-profit organization, mailed several unsolicited batches of materials to multiple Jail inmates. The materials included, among other items, copies of two HRDC publications, *Prison Legal News* and *The Habeas Citebook: Ineffective Assistance of Counsel* ("*The Habeas Citebook*"), together with subscription order forms. Most of the mailings were returned to HRDC marked "Refused," "Return to Sender Insufficient Address," or "Return to sender, postcards only." HRDC then sued Baxter County under 42 U.S.C. § 1983, alleging that (1) the Jail's postcard-only policy violates HRDC's First Amendment right to communicate with Jail inmates,

_____

[1]The Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri, sitting by designation.

-2-

and (2) the Jail's rejection of HRDC's mailings violated HRDC's Fourteenth Amendment procedural due process rights to notice and an opportunity to appeal the Jail's decisions.

The district court initially granted partial summary judgment in favor of HRDC, concluding that the Jail's rejection of HRDC mailings on August 5, 2016, was a "technical" violation of HRDC's due process rights to notice of the reason for the rejection and an opportunity to be heard. After a bench trial, the district court held the postcard-only policy was reasonably related to legitimate penological goals and did not violate HRDC's First Amendment rights. *See Turner v. Safley*, 482 U.S. 78 (1987); *Simpson v. Cnty. of Cape Girardeau*, 879 F.3d 273 (8th Cir. 2018). The district court awarded HRDC four dollars in nominal due process damages for its four discrete August 2016 mailings. HRDC appeals both rulings. We affirm the due process ruling, vacate the First Amendment ruling, and remand for further proceedings.

## I. Background

HRDC's non-profit mission "is to educate prisoners and the public about the destructive nature of racism, sexism, and the economic and social costs of prisons to society." HRDC accomplishes this mission through litigation, advocacy, and publishing/distributing magazines and books to prisoners nationwide.

*Prison Legal News* is a 72-page monthly magazine containing news about prison facilities and conditions, prisoners' rights, and court opinions. *The Habeas Citebook* is a 200-page self-help book detailing federal and state cases dealing with ineffective assistance of counsel issues. To communicate its message and to solicit new subscribers, HRDC sends unsolicited batches of "outreach" materials to inmates, including samples of books and magazines, letters, prior court cases, and subscription information.

Baxter County is located in north central Arkansas. The Jail houses 116-141 pretrial detainees, convicted misdemeanants, and felons awaiting transportation to the Arkansas Department of Corrections. Very few Jail inmates are there longer than a matter of months.

In December 2011, the Sheriff announced a new postcard-only mail policy. The Sheriff issued a press release explaining the rationale for the new policy: "First, it is being undertaken as a security precaution as a proactive measure to decrease the amount of contraband coming into the Detention Center. Second, it is being undertaken as a cost savings measure to the county, which has to supply postage for indigent inmates." At trial, the Sheriff reiterated the security and cost-saving rationales. He testified that the postcard-only policy was also designed to conserve resources because it made inspecting and processing the mail more efficient, allowing limited Jail staff more time to carry out other duties. Under this policy, HRDC's mailings were returned to HRDC instead of being distributed to inmates.

## II. The First Amendment Claim

The Supreme Court has made it clear that persons who are incarcerated do not forfeit First Amendment protection of their rights to freedom of speech and religion at the prison gate. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Nor do prison walls "bar free citizens from exercising their own constitutional rights by reaching out to those on the 'inside.'" *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). "[T]here is no question that publishers who wish to communicate with those who, through subscription, willingly seek their point of view have a legitimate First Amendment interest in access to prisoners." *Id.* at 408. However, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell*, 441 U.S. at 547.

To determine whether a jail or prison policy infringes on the First Amendment rights of inmates, as well as those seeking to communicate with them, "the relevant inquiry is whether the [policy is] 'reasonably related to legitimate penological interests.'" *Thornburgh*, 490 U.S. at 409 (quoting *Turner*, 482 U.S. at 89). To help answer that question, the Supreme Court has identified factors relevant to this inquiry: (1) "whether the [policy] has a 'valid rational connection' to a legitimate governmental interest"; (2) "whether alternative means are open to [those desiring to communicate with] inmates to exercise the asserted right"; (3) "what impact an accommodation of the right would have on guards and inmates and prison resources"; and (4) "whether there are 'ready alternatives' to the [policy]." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (quoting *Turner*, 482 U.S. at 89–91). These so-called *Turner* factors present factual and legal questions for which "the district court must necessarily find the facts that either support or undermine the constitutionality of a particular [policy], [but] the ultimate conclusion as to constitutionality is a question of law." *Hill v. Blackwell*, 774 F.2d 338, 343 (8th Cir. 1985). Courts are to give "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton*, 539 U.S. at 132.

After a bench trial, the district court upheld the postcard-only policy concluding "that all of the *Turner* factors favor the County." We review de novo the court's application of the *Turner* factors to its factual findings. *Iron Eyes v. Henry*, 907 F.2d 810, 813 (8th Cir. 1990). The burden of persuasion is not on the County to prove the validity of its policy, but on HRDC to disprove it. *Overton*, 539 U.S. at 132; *see Beard v. Banks*, 548 U.S. 521, 529 (2006).

As the district court recognized, the second *Turner* factor—whether alternative means are open to exercise the asserted right—presents a different issue when the outsider seeking to communicate with inmates is a publisher like HRDC, rather than

-5-

a member of an inmate's immediate family, as was the case in *Simpson*.[2] The district court found that this factor favored the County because there are several alternative ways in which HRDC can communicate with Jail inmates—postcards, in-person visitation, and donating materials to the Jail's law library. The district court acknowledged, however, the alternative means available to HRDC, a distant publisher, are less practical than the alternatives available to the inmate's nearby mother in *Simpson*.

The Supreme Court has made it clear that while alternative means of communication do not have to be "ideal," they do have to be "available." *Overton*, 539 U.S. at 135; *see also Pell v. Procunier*, 417 U.S. 817 (1974). If the alternative means are illusory, impractical, or otherwise unavailable, this would weigh in favor of HRDC under the second *Turner* factor. A key consideration in this case is that, even if HRDC could be required to use only postcards to solicit inmate subscribers, the postcard-only policy appears to prohibit Jail inmates from receiving any of HRDC's publications, as subscribers or otherwise. Thus, HRDC asserts, the policy is a *de facto* total ban on publishers communicating with inmates. The Supreme Court has twice warned that "a *de facto* permanent ban" on inmate access to communication with outsiders would present a serious constitutional issue. *Beard*, 548 U.S. at 535; *Overton*, 539 U.S. at 134. Our prior cases reflect that concern. *See Murphy v. Mo. Dep't of Corr.*, 814 F.2d 1252, 1257 (8th Cir. 1987) (holding a mail policy which totally banned communication from an organization violated the free speech and free exercise of religion rights of the inmates). Unfortunately, the district court's findings and conclusions did not address this issue.

---

[2]In *Simpson*, we expressly recognized our holding was "narrow" due to the "fact-intensive" nature of the *Turner* analysis "requiring careful examination of the policies and institutions at issue in each case." 879 F.3d at 282.

Here, HRDC is asserting its First Amendment right as a publisher to access inmates. By contrast, the Supreme Court's concern in *Beard* was the impact of a *de facto* permanent ban on the First Amendment rights of certain "specially dangerous and recalcitrant inmates" to access publications. Applying *Turner*, the Court in *Beard* reversed the grant of summary judgment invalidating a limited total ban. 548 U.S. at 533–36 (restriction denying "level 2" inmates all access to newspapers or magazines for at least ninety days). The Court has not considered the extent to which a ban on access to inmates may violate the separate First Amendment rights of outsiders, including publishers. Those rights are not wholly derivative of the rights of inmates.[3]

Viewed in this light, an important question is whether HRDC proved its assertion that the postcard-only policy results in "a *de facto* total ban" on Jail inmates accessing HRDC's materials. The district court made no finding of fact on this issue, and the record on appeal provides little help because neither party at trial focused on the issue.[4] As written, the postcard-only policy looks like a total ban—it instructs Jail

_____

[3]The rights of outsiders to communicate "are correlative to the rights of prisoners and must be analyzed under the same standard. But [it] is wrong to conclude that outsiders' rights are therefore strictly dependent on a prior request from an inmate." *Prison Legal News v. Livingston*, 683 F.3d 201, 214, 218 (5th Cir. 2012) (upholding the ban on five books because the policy left "open ample alternative avenues for [the publisher] to express its views to Texas inmates").

[4]The dissent believes donation to the Jail's "small law library" is an "obvious viable alternative," and asserts the policy does not facially "preclude inmates from accessing communal copies of HRDC's publications permitted by the Sheriff." But we do not see donation to the so-called "law library," which consists of six or seven worn books in a milk crate, Trial Tr. Vol. 2 at 205:12–13, 223:25–224:6, ECF No. 128, as such an obvious solution. For one, the record is unclear whether HRDC's materials would be permitted by the Sheriff. The unrebutted testimony at trial was that no publisher can send books into the Jail, Trial Tr. Vol. 1 at 121:5–8, ECF No. 127; that no magazines of any type are allowed in the Jail, *id.* at 124:21–23; and that

staff not to deliver books and magazines to inmates. There was also trial testimony that inmates may not order or receive such publications. And there is evidence that the Jail has no electronic reading kiosk and that it stopped maintaining a book cart for the inmates to use.

In order to conduct the required *Turner* analysis, it is necessary for us to have a finding on what, if any, alternative means are available to HRDC to exercise its "First Amendment interest in access to prisoners." *Thornburgh*, 490 U.S. at 408.[5]

_____

the Jail does not accept books, Trial Tr. Vol. 2, at 210:5–17, 211:8–10, ECF No. 128. And it is unclear what avenue is available *to HRDC* to get permission from the Sheriff under the policy. Whatever potential the Jail's grievance procedure may hold for prisoners, it is unavailable to a non-inmate publisher like HRDC. This further highlights the absence of a factual finding by the district court that enables this court to determine whether the postcard-only policy is a *de facto* ban on HRDC's publications.

[5]This alternative-means finding should be considered with the other three *Turner* factors to determine the reasonableness of the policy. *See Thornburgh*, 490 U.S. at 414. Because the *Turner* factors should be considered as part of the overall weighing of the relevant interests, as opposed to in a piecemeal fashion, we decline to comment on these other factors at this time.

Citing to *Beard*, 548 U.S. at 532–33, the dissent believes the *Turner* analysis can be conducted without additional fact-finding by the district court and it emphasizes what it apparently sees as the primacy of the first *Turner* factor. We do not interpret *Beard* so broadly. The full text of the discussion in *Beard* reveals the Supreme Court was discussing the *Turner* analysis in the very specific context of the policy at issue and observing the factors in that *particular case* were largely redundant. *Id.* at 532 (observing, after it had analyzed all the *Turner* factors, that "the second, third, and fourth factors, being logically related to the Policy itself, *here* add little, one way or another, to the first factor's basic logical rationale") (emphasis added). The calculus was specific to the policy in *Beard* rather than a general proposition of law. *Id.* That is why this court has long recognized that "a *Turner* analysis is a fact-intensive inquiry requiring a careful examination of the policies and

Accordingly, we vacate the dismissal of HRDC's First Amendment claim and remand for further proceedings not inconsistent with this opinion. *See generally* 9C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2577 (3d ed. 2020); *Swanson & Youngdale, Inc. v. Seagrave Corp.*, 561 F.2d 171, 174 (8th Cir. 1977).

### III. Due Process Claims

HRDC also argues that the district court erred by failing to grant summary judgment on its claim that the County violated its procedural due process right, as defined by *Procunier v. Martinez*, 416 U.S. 396, 418–19 (1974). HRDC contends that under *Procunier*, it is entitled to notice of all rejected mailings and a reasonable opportunity to make a protest to a prison official other than the person who rejected the mailings. *Id.* The County argues that HRDC failed to preserve this issue because it did not include the district court's summary judgment Opinion and Order in its Notice of Appeal. *See* Fed. R. App. P. 3(c)(1)(B); *Hawkins v. City of Farmington*, 189 F.3d 695, 704–05 (8th Cir. 1999). We do not decide this issue because we conclude HRDC's contention is without merit.

After analyzing the relevant caselaw, the district court assessed HRDC's due process claims under *Mathews v. Eldridge*, 424 U.S. 319 (1976), rather than the more stringent standards of *Procunier*, a censorship case. The district court reasoned this was proper because "altogether different considerations come into play when a publication is rejected not because it was censored based on its content or the status of the sender but rather because it was a mass mailing rejected pursuant to the routine enforcement of a rule with general applicability." We agree with that analysis. The

institutions at issue in each case." *Simpson*, 879 F.3d at 282. Where the plaintiff is a publisher, rather than an inmate, we cannot give mere lip service to interests beyond the first *Turner* factor that the Supreme Court has expressly acknowledged are protected by the First Amendment. *Thornburgh*, 490 U.S. at 408.

Court in *Procunier* expressly stated that "[d]ifferent considerations may come into play in the case of mass mailings." 416 U.S. at 408 n.11. In later cases, the Court has characterized *Procunier* "as a case concerning 'written communication by inmates' to noninmate recipients." *Thornburgh*, 490 U.S. at 411 n.10 (quoting *Pell*, 417 U.S. at 826). More recently, the Eleventh Circuit concluded: "Since mass mailings require a lower standard for due process guidelines, we evaluate what process is due under the test set forth in *Mathews v. Eldridge*[]." *Perry v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 1359, 1368 (11th Cir. 2011).

Here, HRDC mailed some inmates several batches of "outreach" materials containing books, magazines, informational packets, and court opinions. Some process was due HRDC when its mailings were rejected. The County had publicly announced in December 2011 that only postcard mailings would be accepted. The record does not reflect whether HRDC did the minimal research needed to learn its 2016 and 2017 outreach mailings did not comply with the published postcard-only policy. If not, when the first mailings were returned to HRDC marked "Refused" in August 2016, a simple phone call to the Jail would have confirmed—as a June 2017 phone call by an HRDC employee did confirm—that all mailings other than postcards would be refused for this same reason. Prior cases suggest that, when one edition of a publication is impounded because one or more advertisements violate prison policies, due process may require the prison to notify the publisher with specific reasons for the impoundment and an opportunity to challenge the decision. But "due process does not require copy-by-copy notice [if] later denials of identical publications amount to the routine enforcement of a rule with general applicability." *Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954, 976 n.20 (11th Cir. 2018) (quoting *Prison Legal News v. Livingston*, 683 F.3d 201, 223 (5th Cir. 2012)).

HRDC challenged the validity of the postcard-only policy under *Turner*, not whether its mailings were wrongly rejected if the policy is valid. No formal appeal process was needed to bring that challenge to the district court. On this summary

-10-

judgment record, the district court concluded the County committed only a "technical" due process violation by marking "Refused" on the August 2016 mailings without explaining why the refusal occurred. The County has not appealed that ruling.

HRDC also argues that the district court erred in awarding only four dollars in nominal damages for the County's due process violations. A plaintiff must prove actual injury to recover compensatory damages for a procedural due process violation but may obtain nominal damages without showing an actual injury. *Carey v. Piphus*, 435 U.S. 247, 263–64, 266 (1978). HRDC argues it proved three types of actual injury at trial—costs for processing and receiving the rejected mailings, overhead costs, and damage to its mission and ability to raise funds. We disagree.

The trial record demonstrates that HRDC would have incurred these costs even if it had received the process due after the August mailings were rejected. HRDC's Executive Director testified at trial that one of its purposes in sending outreach mailings is to "investigat[e] censorship practices at facilities." HRDC sends outreach to a particular facility "[b]ased on what we're investigating, if they have unconstitutional mail practices or censorship practices." Its practice is to send outreach to a facility being investigated "once or twice, you know, maybe three times, as we did in this case . . . to figure out what their practices are." Here, the Director explained, HRDC sent three batches to the Jail over the course of nearly a year "to confirm that they, in fact, had not changed their policies." This testimony strongly supports the district court's finding that HRDC failed to prove actual injury flowing directly from the technical due process violation in August 2016. Therefore, the district court did not err in awarding HRDC a dollar in nominal damages for each of the four types of mailings it sent on August 5, 2016. *See Fegans v. Norris*, 537 F.3d 897, 908 (8th Cir. 2008); *Corpus v. Bennett*, 430 F.3d 912, 916 (8th Cir. 2005) (explaining "one dollar is recognized as an appropriate value for nominal damages").

## IV. Conclusion

We affirm the district court's judgment on HRDC's due process claim. We vacate the district court's judgment on HRDC's First Amendment claim, and we remand for further proceedings consistent with this opinion.

LOKEN, Circuit Judge, concurring in part and dissenting in part.

I concur in Part III of the court's opinion and its decision to affirm the district court's judgment on HRDC's due process claim. I respectfully dissent from Part II, which remands for further fact findings on publisher HRDC's First Amendment claim that the Baxter County Jail's postcard only policy is a "*de facto* permanent ban" of HRDC's mailings of books and other printed materials to the Jail's inmates and detainees. I would affirm the district court's judgment in its entirety.

In response to the need of a small jail to maintain a safe, efficient, and cost-effective facility, Baxter County limited non-privileged mail directed to inmates to postcards. HRDC publishes *Prison Legal News* and *The Habeas Citebook* and solicits subscriptions from inmates. HRDC sued alleging violations of its First Amendment right "in communicating with incarcerated individuals." As the majority recognizes, to resolve the ultimate question -- whether a jail policy is "reasonably related to legitimate penological interests" -- the Supreme Court considers the four factors it fashioned in Turner v. Safley, 482 U.S. 78 (1987). See Thornburgh v. Abbott, 490 U.S. 401, 407-14 (1989).

The sticking point for the majority was the second Turner factor -- "whether alternative means are open to [those desiring to communicate with] inmates to exercise the asserted right." *Ante* p.5. Its analysis of the *de facto* permanent ban question reads like we are reviewing a Rule 12(b)(6) dismissal or a Rule 56 summary judgment. It begins with the observation that "the postcard-only policy *appears* to

-12-

prohibit Jail inmates from receiving any of HRDC's publications, as subscribers or otherwise," *ante* p.6, and concludes that appearances are enough to require a remand for additional fact finding. But in this case, the district court denied cross motions for summary judgment and conducted a bench trial in which HRDC had the burden to prove the policy's invalidity, see Overton v. Bazzetta, 539 U.S. 126, 132 (2003), including the second Turner factor, see Holloway v. Magness, 666 F.3d 1076, 1080-81 (8th Cir.), cert. denied, 568 U.S. 836 (2012). The facts proved at trial govern whether HRDC proved its as-applied claim of a *de facto* permanent ban, not what the policy appears on its face to prohibit.

Moreover, in my view the majority's observation misreads the policy. The Baxter County Detention Facility's Mail Regulations in effect in 2012, after the postcard-only policy was adopted, provide in relevant part:

1. For purposes of this policy, the following definitions shall apply:
   A. **"Privileged Mail"** . . . .

   B. **"General Mail"**: Any correspondence . . . not covered under the definition of "privileged mail." General mail may also include any publications, magazines, newspapers, periodicals, journals and pamphlets received *by inmates* from their originating source, providing such are permitted by the Sheriff.

2. Guidelines for the Processing of Incoming Mail:
   A. All incoming mail to the jail will be received at the sheriff's department and will be forwarded to the jail administrator . . . for delivery to the jail. . . . With the exception of privileged mail or legal mail, the only type of mail the jail staff are permitted to accept for the inmate is post cards. Other mail will be marked for return to sender.

-13-

(Emphasis added.) By its plain terms, the postcard-only policy in Section 2.A applies to incoming mail *addressed directly to an inmate for delivery to that inmate*, whereas Section 1.B authorizes the Sheriff to permit receipt of General Mail not addressed to inmates, including publications HRDC claims were subject to a "*de facto* permanent ban." In other words, on its face the policy does not preclude inmates from accessing communal copies of HRDC's publications if permitted by the Sheriff.

The trial highlighted this reality. In defense of the policy's reasonableness, Baxter County presented evidence that the Jail has a formal grievance process, and there was testimony that no inmate has filed a grievance challenging the policy, or requested an informal exception under Section 1.B of the policy, or attempted to subscribe to an HRDC publication. HRDC did not join one or more Jail inmates as co-plaintiffs or call an inmate witness who could have challenged this evidence, as it has done in other postcard-only challenges.[6] See, e.g., Prison Legal News v. Lehman, 397 F.3d 692 (9th Cir. 2005); Prison Legal News v. Cook, 238 F.3d 1145 (9th Cir. 2001). As the majority notes, HRDC elicited testimony by the Sheriff that books and magazines may not be sent to the jail. But the context was mailings addressed to the inmate and intended for his personal use and possession. HRDC's attorneys -- a litigation team of lawyers from Seattle, Washington, Lake Worth, Florida, and Little Rock, Arkansas, who have litigated this issue all over the country -- carefully avoided asking the Sheriff whether his authority to permit receipt of books and other publisher materials as General Mail not addressed to specific inmates would include permission to accept donated copies of HRDC's *Prison Legal News* and *The Habeas Citebook* to be made available to inmates generally on the Jail's book cart or in its law library. (There was testimony the Jail maintained a book cart

_____

[6]This apparent lack of inmate interest in HRDC publications is not surprising. An inmate or detainee expecting to stay at the Jail for two or three months is not likely to be interested in a year-long subscription to *Prison Legal News*, or in spending $50 for a book teaching how to obtain habeas relief.

-14-

for non-legal materials but ended it shortly before trial because inmates were tearing up the books.)

The Sheriff further testified that risk management attorneys from the Association of Arkansas Counties review new Baxter County policies and changes to existing policies and generally "make sure our policies and procedures and everything we do helps protect the inmates and their rights." HRDC claimed in this action it was deprived of its due process right to notice and an opportunity to be heard. But in the year between when its first mailings were returned marked "Refused" to its filing of this lawsuit, HRDC never engaged in a discussion with the Sheriff about changing the policy or appealed the postcard-only policy to Baxter County decisionmakers.

In ruling that the second Turner factor did not favor HRDC, the district court noted:

> There was testimony from [HRDC founder and Executive Director] Paul Wright that an employee of HRDC contacted the County Jail after its publications began being rejected to inquire about how it could mail its materials to the Jail. It was informed that it could not mail its materials directly to prisoners unless the mailings were on postcards. However, there was no testimony that HRDC ever inquired about donating its materials to the Jail. The likely reason, of course, is that at least part of HRDC's mission is to increase paid subscriptions to its publications.

In my view, there is an additional likely reason HRDC made no attempt to determine whether there were ways other than direct mailings that Jail inmates could access books and printed materials HRDC claims are banned. When HRDC and other publishers made such inquiries in prior cases, prison and jail officials have adopted modifications that publisher plaintiffs did not favor but reviewing courts approved under Turner and Thornburgh in rejecting claims of *de facto* total ban. The risk of

-15-

triggering such an adverse response is substantial because it is well settled that "[a]lternatives to the type or amount of speech at issue 'need not be ideal . . . they need only be available.'" Holloway, 666 F.3d at 1080 (quotation omitted).

For example, in Crime Justice & America v. Honea, a publisher challenged a policy that "prohibits delivery of unsolicited commercial mail to inmates" that was adopted to combat problems caused by inmates misusing paper. 876 F.3d 966, 970 (9th Cir. 2017). In response, "[o]fficials installed electronic kiosks throughout the jail during the litigation." The district court found after a bench trial this was an adequate alternative that satisfied the second Turner factor. Id. at 976. On appeal, the publisher argued "kiosks do not guarantee the same level of saturation as delivering fifty-five hard copies of the magazine to the jail every week." Id. The Ninth Circuit affirmed, noting that inmates use paper for a variety of nefarious acts and are more likely to misuse paper that does not belong to them. Id. at 973. "Where other avenues remain available for the exercise of the asserted right," the court reasoned, "courts should be particularly conscious of the measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." Id. at 976, quoting Turner, 482 U.S. at 90.

Even more relevant to the issue in this case, in Avery v. Turn Key Health Clinics, LLC, an inmate sued Benton County, Arkansas, challenging a Detention Center policy not to accept books that were directed to inmates from individuals. Based on the Turner factors, the court upheld the book policy as reasonable, concluding it "is not a complete ban" because it "provides that books will be accepted by the jail clerk's office, but only on a 'donation basis,'" and then "will be available to all inmates through the library." No. 5:18-cv-05075, Mem. Opinion & Order at 22, 2020 WL 714176 at *10-11 (W.D. Ark. Dec. 12, 2020), aff'd on other grounds, No. 20-1608 (8th Cir. Jan. 12, 2021).

HRDC, a non-profit organization, could have offered to donate publications for access by inmates on the Jail's book cart or in the jail library, but did not do so. HRDC could have challenged the Sheriff's policy to Baxter County administrators, but did not do so. Executive Director Wright testified HRDC decided that any attempt to challenge the postcard-only policy administratively would have been futile. I infer that testimony was disingenuous if not dishonest. HRDC has filed First Amendment and due process actions around the country challenging postcard-only and other policies restricting its ability to communicate with prisoners in correction facilities of all sizes. HRDC knew that, if it engaged in a discussion with Baxter County about its policy, the County might respond that inmates may access donated publisher materials on the book cart or in the library, but not in their cells. That was the accommodation upheld in <u>Avery</u>, 2020 WL 714176 at *10-11. Rather than risk an unfavorable accommodation that would be afforded judicial deference under <u>Turner</u> standards, HRDC brought this purported "as applied" action based on how the bare postcard-only policy may "appear" to the court. In other words, this is, in reality, a disguised facial attack that has persuaded the majority to conduct an improper *de novo* review of a policy they consider flawed. If there is indeed a *de facto* ban, it is a self-inflicted wound.

The factual focus through summary judgment and trial was not the second <u>Turner</u> factor. The parties focused on the first <u>Turner</u> factor -- whether the challenged policy has a valid rational connection to a legitimate government interest. Rightly so. The first factor is a critical threshold issue. If Baxter County failed to justify its postcard-only policy under this standard, game over, HRDC prevails. <u>See</u> <u>Simpson v. Cnty. of Cape Girardeau</u>, 879 F.3d 273, 279 (8th Cir. 2018); <u>Singer v. Raemisch</u>, 593 F.3d 529, 534 (7th Cir. 2010). The majority ignores or overlooks Supreme Court decisions making clear that the four <u>Turner</u> factors are not a typical multi-factor test. HRDC's First Amendment right to access jail inmates is not "wholly derivative of the rights of inmates," *ante* p.7, but its right must give way to a *valid* jail or prison policy that prohibits inmates from receiving the communication in the interest of

-17-

"maintaining institutional security and preserving internal order and discipline." Bell v. Wolfish, 441 U.S. 520, 546 (1979); see also Thornburgh, 490 U.S. at 410 n.9 (listing cases implicating both inmate and outsider rights). Thus, when a jail policy satisfies the first Turner factor, the Supreme Court considers the other three factors to determine whether the policy is *reasonably* related to Baxter County's legitimate penological interests. If the second, third, and fourth factors are "logically related to the Policy itself, [they] add little, one way or another, to the first factor's basic logical rationale. . . . The real task . . . is not balancing these factors, but rather determining whether the [County] shows more than simply a logical relation, that is, whether [it] shows a *reasonable* relation." Beard v. Banks, 548 U.S. 521, 532-33 (2006) (plurality opinion).

Regarding the second factor, "[t]he absence of any alternative . . . provides 'some evidence that the regulations [a]re unreasonable,' but is not 'conclusive' of the reasonableness of the Policy." Id. at 532 (2006), quoting Overton v. Bazzetta, 539 U.S. 126, 135 (2003); see also Block v. Rutherford, 468 U.S. 576, 588 & n.9 (1984) (upholding "blanket prohibition on contact visits"). The district court recognized that the issue of alternative available means is different in this case than in Simpson, where an inmate's mother was the plaintiff. But the court concluded that HRDC's position was "untenable" because "accepting HRDC's argument at face-value requires finding that a mother attempting to communicate with her child in prison would have fewer First Amendment freedoms than a publisher who sends unsolicited mailings into a prison in order to (at least in part) sell subscriptions to its magazines." I agree. As the Supreme Court said years ago, the press has "no constitutional right of access to prisons or their inmates beyond that afforded the general public." Pell v. Procunier, 417 U.S. 817, 834 (1974). HRDC is asserting the right to send its unsolicited materials to every inmate and detainee at the Jail. "Different considerations may come into play in the case of mass mailings." Procunier v. Martinez, 416 U.S. 396, 408 n.11 (1974).

In this case, the district court identified an obvious viable alternative by which HRDC could communicate its intended messages to inmates -- "attempt to donate its materials to the Jail to supplement the County's small law library." Given the availability of this alternative, HRDC failed to carry its burden to prove at trial a *de facto* permanent ban that made the Jail's mail policies either not *reasonably* related to legitimate penological objectives or an exaggerated response to such concerns. Thus, the district court did not err in finding that the second <u>Turner</u> factor does not favor HRDC.

Baxter County defended its policy on the grounds of efficiency, cost-effectiveness, and security -- "the most compelling government interest in a prison setting." <u>Simpson</u>, 879 F.3d at 279 (citations omitted). The defense prevailed at trial, despite HRDC's evidence as to the remaining three <u>Turner</u> factors. I would affirm.

_____