# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-1677

_____

Human Rights Defense Center,

*Plaintiff - Appellant*,

v.

Union County, Arkansas; Ricky Roberts, Union County Sheriff, in his individual and official capacities; Captain Richard Mitcham, Jail Administrator, in his individual and official capacities; Lt. Paul Kugler, Assist. Jail Administrator, in his individual and official capacities; John Doe, #1-10 in their individual and official capacities,

*Defendants - Appellees*,

------------------------------

Clark-Fox Family Foundation; The Marshall Project; Prison Journalism Project; Arch City Defenders; Missourians to Abolish the Death Penalty; Center for Appellate Litigation; Florida Justice Institute; Just Detention International; Prison Law Office; Rights Behind Bars; Roderick & Solange MacArthur Justice Center; Uptown People's Law Center,

*Amici on Behalf of Appellant(s)*.

_____

Appeal from United States District Court
for the Western District of Arkansas - El Dorado

_____

Submitted: February 13, 2024

Filed: August 6, 2024
_____

Before LOKEN, COLLOTON,[1] and KELLY, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Human Rights Defense Center (HRDC) sued Union County and various officials under 42 U.S.C. § 1983. HRDC alleged that the defendants violated the First and Fourteenth Amendments when they refused to accept publications that the Center mailed to detainees. A jury returned a verdict in favor of the defendants, and the district court[2] denied HRDC's post-trial motion for relief. HRDC appeals, and we affirm.

I.

HRDC is a "non-profit organization that advocates and seeks progressive change in the criminal justice system." As part of its advocacy work, the organization publishes magazines and books for prisoners to inform them about their legal rights. In 2017, HRDC began mailing copies of its publications to detainees at the Union County Detention Center in El Dorado, Arkansas.

The Union County Detention Center houses approximately 185 persons, most of whom are pretrial detainees. Approximately nine inmates participating in a state

---

[1]Judge Colloton became chief judge of the circuit on March 11, 2024. *See* 28 U.S.C. § 45(a)(1).

[2]The Honorable Susan O. Hickey, Chief Judge, United States District Court for the Western District of Arkansas.

work-release program are also assigned to the detention center. In 2012, the County implemented a policy limiting incoming mail for detainees to postcards only. The County adopted this policy to reduce avenues for contraband to enter the facility and to conserve staff resources. The policy did not apply to inmates participating in the work-release program.

In 2018, the County began scanning incoming mail for detainees. Detainees access the scanned mail on tablet computers and kiosks in the detention center. The County does not scan publications, but the tablets and kiosks contain an application that allows detainees to access electronic books.

The executive director of HRDC knew about the County's postcard-only policy when it began mailing its publications to detainees at the detention center. The County returned some of the mail with the message, "Return to Sender Reason: Post Cards Only." Most mailings were returned without explanation or were not returned at all.

HRDC sued the County and several officials under § 1983, claiming that the postcard-only policy violates the First Amendment. HRDC also alleged that the defendants violated the Due Process Clause by rejecting mailings without explanation and by failing to provide an appeal process for rejected mail.

At trial, HRDC presented the testimony of its executive director, the sheriff of Union County, the administrator of the detention center, and an expert on jail administration. The district court granted judgment as a matter of law for the defendants on one claim, and the jury found for the defendants on the rest. The district court denied HRDC's motions for judgment as a matter of law, and HRDC appeals.

II.

Publishers have a limited right to communicate with prisoners under the First Amendment. *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989). "[T]here is no question that publishers who wish to communicate with those who, *through subscription*, willingly seek their point of view have a legitimate First Amendment interest in access to prisoners." *Id.* (emphasis added). Some courts have concluded that this interest extends to *unsolicited* communications with prisoners, *see Prison Legal News v. Livingston*, 683 F.3d 201, 213-14 (5th Cir. 2012); *Hrdlicka v. Reniff*, 631 F.3d 1044, 1049 (9th Cir. 2011), but this court has not addressed the point. Even assuming that publishers have a First Amendment interest in sending unsolicited communications to prisoners, we conclude that HRDC has not shown a constitutional violation.

A prison regulation that impinges on a publisher's protected communication with prisoners is valid if "reasonably related to legitimate penological objectives." *Turner v. Safley*, 482 U.S. 78, 89, 99 (1987); *Hum. Rts. Def. Ctr. v. Baxter County*, 999 F.3d 1160, 1164 (8th Cir. 2021). That determination depends on (1) whether the regulation is rationally connected to a legitimate and neutral governmental interest; (2) whether the publisher has an alternative means of exercising the constitutional right; (3) the impact that accommodating the publisher's asserted right would have on prison staff, prisoners, and resources; and (4) whether ready alternatives to the regulation exist. *Turner*, 482 U.S. at 89-91; *see also Abbott*, 490 U.S. at 414-19.

The jury in this case considered those factors and found that the defendants did not violate the First Amendment. The district court then denied HRDC's renewed motion for judgment as a matter of law. We review the denial of the motion *de novo*, considering the evidence in the light most favorable to the verdict. *Structural Polymer Grp., Ltd. v. Zoltek Corp.*, 543 F.3d 987, 991 (8th Cir. 2008). Viewing the

facts in the light most favorable to the verdict, and assuming for analysis that we consider application of the *Turner* standard *de novo*, we conclude that the postcard-only policy did not violate the First Amendment.

The postcard-only policy is rationally related to legitimate penological objectives. The County's interests in reducing contraband and promoting institutional efficiency are legitimate. *Weiler v. Purkett*, 137 F.3d 1047, 1050 (8th Cir. 1998) (en banc) (reducing contraband); *Simpson v. County of Cape Girardeau*, 879 F.3d 273, 279 (8th Cir. 2018) (institutional efficiency). The County presented evidence that the postcard-only policy reduced avenues for contraband to enter the detention center and reduced the time required for staff to check incoming mail.

HRDC also had alternative means of communicating with detainees. Since 2018, the County's kiosks and tablets have supported an application for reading electronic materials. The sheriff and the jail administrator testified that HRDC could have worked with the application vendor to provide its publications to detainees. While HRDC may prefer to mail paper copies of its publications, alternatives "need not be ideal." *Overton v. Bazzetta*, 539 U.S. 126, 135 (2003). HRDC notes that the kiosks and tablets were not available in 2017 when it first began mailing publications to Union County detainees. But HRDC's claim at trial concerned an undifferentiated period from 2017 through 2023, and it is appropriate to consider the entire period when evaluating the reasonableness of the County's policy.

At trial, HRDC proposed an alternative policy: The County could allow detainees to receive publications mailed by publishers but exclude publications mailed by others. HRDC argues that adopting this policy would not require reallocation of resources or additional expenditures. The organization points out that the County already accepts publications addressed to inmates in the work-release

program. And HRDC cites the sheriff's testimony that the County does not search publishers' mailings.

The evidence, however, was inconsistent on the question of searching mail from publishers. The sheriff testified at another point that the County *does* search publishers' mailings. The jail administrator testified that the County searches publications. Assuming, as we must, that the jury resolved this factual dispute against HRDC, it is evident that searching publications for 185 prisoners rather than just nine would require reallocation of staff resources and impose "greater than *de minimis* cost" on the County. *Simpson*, 879 F.3d at 281.

We thus conclude that the County's policy was reasonably related to legitimate penological objectives and consistent with the First Amendment. The district court correctly denied HRDC's motion for judgment as a matter of law on that claim.

HRDC also alleges that the County violated the organization's right to due process of law by failing to provide adequate notice and opportunity to be heard about rejected mailings. This court said in a prior decision that "[s]ome process was due HRDC when its mailings were rejected," but "due process does not require copy-by-copy notice [if] later denials of identical publications amount to the routine enforcement of a rule with general applicability." *Hum. Rts. Def. Ctr.*, 999 F.3d at 1167 (second alteration in original) (internal quotation omitted).

HRDC complains that not all publications that it mailed to Union County were identical so it was entitled to something akin to "copy-by-copy notice." But HRDC received notice that some of its publications were rejected because they violated the postcard-only policy. In fact, the executive director of HRDC testified that the organization began mailing publications to detainees in Union County precisely because it wanted to challenge the postcard-only policy. There was no need for the

-6-

County to provide additional notice that different publications were rejected based on the same postcard-only policy. And as in our prior decision, HRDC was not entitled to a formal appeal process because the organization challenged the validity of the postcard-only policy, not the rejection of individual mailings under that policy. *Id.*

HRDC argues finally that the district court abused its discretion by failing to give a curative instruction after the County's attorney referred to the *Turner* standard as a "rational basis" standard. The *Turner* standard is "'very similar,' if not identical, to rational basis review." *Aref v. Lynch*, 833 F.3d 242, 259 (D.C. Cir. 2016) (internal quotation omitted); *see United States v. Brandon*, 158 F.3d 947, 952 (6th Cir. 1998). But even assuming there is a material difference between the two standards, the jury instructions described the *Turner* standard, and no further instruction was necessary.

The judgment of the district court is affirmed.

_____