# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-1888
_____

Human Rights Defense Center

*Plaintiff - Appellee*

v.

Baxter County, Arkansas

*Defendant - Appellant*

------------------------------

Clark-Fox Family Foundation; The Marshall Project; Prison Journalism Project; Arch City Defenders; Missourians to Abolish the Death Penalty; Roderick & Solange MacArthur Justice Center; Center for Appellate Litigation; Florida Justice Institute; Just Detention International; Prison Law Office; Rights Behind Bars; Uptown People's Law Center

*Amici on Behalf of Appellee*

_____

No. 23-3586
_____

Human Rights Defense Center

*Plaintiff - Appellee*

v.

Baxter County, Arkansas

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas
_____

Submitted: September 24, 2024
Filed: February 24, 2025
_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

This appeal requires us to resolve whether a jail can prohibit a publisher from communicating its publications to inmates in the absence of any available alternative means. We conclude the blanket ban on the publisher's materials violated the publisher's First Amendment rights in light of the district court's[1] finding that the jail failed to show more than a de minimis cost if such publications were permitted at the facility. We therefore affirm.

## I. Background

This marks the second time our court has addressed the Human Rights Defense Center's (HRDC) efforts to mail its materials to Baxter County Jail and Detention Center (Jail). *See Hum. Rts. Def. Ctr. v. Baxter County* (*Baxter I*), 999 F.3d 1160 (8th Cir. 2021). HRDC publishes and distributes books and magazines designed to inform prisoners about their legal rights and news stories about the criminal justice system. It distributes these publications to subscribers and sends unsolicited mailings to prisoners with an order form, in hopes of recruiting new subscribers. In 2016 and 2017, HRDC sent numerous books, magazines, and other

---

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

mailings to inmates at the Jail.  But the Jail had adopted a policy limiting all nonlegal mail to inmates to postcards, so HRDC's mailings were rejected.

HRDC then filed this lawsuit against Baxter County, asserting the Jail's postcard-only policy violated its free speech and due process rights under the First and Fourteenth Amendments of the United States Constitution.  The district court awarded partial summary judgment to HRDC on the due process claim related to some mailings, finding a technical violation of HRDC's right to notice of the reason its publications were rejected, but held the postcard-only policy did not violate HRDC's free speech rights following a bench trial.  We vacated and remanded the decision as to the First Amendment ruling, concluding additional factfinding was necessary on whether HRDC had any available alternative means to exercise its First Amendment rights.  *Baxter I*, 999 F.3d at 1165–66, 1168.

Upon remand, the district court held an evidentiary hearing and ultimately found the Jail's policies created a de facto ban on any HRDC publication and that permitting HRDC to directly send its publications to inmates at the Jail would have had a de minimis impact on the Jail's operations.  Based on these findings, the district court concluded the Jail's policy was not reasonably related to legitimate penological objectives and therefore violated HRDC's rights, as applied to HRDC's publications.[2]  It awarded HRDC $1 of nominal damages on its free speech claim, a permanent injunction of the postcard-only policy as applied to publications directly mailed from a publisher, and attorney fees and costs.

Baxter County appeals, arguing the district court erred in its determination of the First Amendment claim and the award of attorney fees and costs.  We affirm.

---

[2]The district court concluded the Jail's policy did not violate HRDC's rights as it pertained to HRDC's letter mail.  HRDC does not appeal this decision.

## II. Analysis

## A. The Free Speech Claim

To determine whether a jail policy violates the First Amendment rights of an entity seeking to communicate with inmates,[3] we ask whether the challenged policy is "reasonably related to legitimate penological interests." *Baxter I*, 999 F.3d at 1164 (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989)). This inquiry turns on four considerations, commonly referred to as the *Turner* factors:

> (1) whether the policy has a valid rational connection to a legitimate governmental interest;
> (2) whether alternative means are open to those desiring to communicate with inmates to exercise the asserted right;
> (3) what impact an accommodation of the right would have on guards and inmates and prison resources; and
> (4) whether there are ready alternatives to the policy.

*Id.* (cleaned up) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). *See also Turner v. Safley*, 482 U.S. 78, 89–91 (1987). "We review de novo the court's application of the *Turner* factors to its factual findings," *Baxter I*, 999 F.3d at 1164, while reviewing those factual findings for clear error, *see Hill v. Blackwell*, 774 F.2d 338, 343 (8th Cir. 1985). The district court weighed all four factors against the Jail as it pertains to HRDC's publications. Baxter County asserts all four favor it.

We begin with the first factor. Without a rational connection to a legitimate governmental interest, a policy fails the *Turner* test "irrespective of whether the other factors tilt in its favor." *Shaw v. Murphy*, 532 U.S. 223, 229–30 (2001). Baxter

---

[3]It is an open question in this circuit whether a publisher has a First Amendment right to send unsolicited communications to inmates, as HRDC did here. *See Hum. Rts. Def. Ctr. v. Union County*, 111 F.4th 931, 934 (8th Cir. 2024). Baxter County does not raise this issue on appeal, so we assume that such right exists for purpose of our analysis.

County asserts the postcard-only policy promotes security and efficiency at the Jail by limiting contraband and the time it takes to screen mail. These "interests in reducing contraband and promoting institutional efficiency are legitimate." *Union County*, 111 F.4th at 935. We have twice affirmed similar postcard-only policies as rationally related to these interests, including when applied to HRDC. *Id.*; *Simpson v. County of Cape Girardeau*, 879 F.3d 273, 279–80 (8th Cir. 2018). So we agree the first factor favors the Jail.[4]

Next, we consider whether HRDC had available alternative means to communicate with inmates, or, if instead, the policy acted as a "*de facto* permanent ban" on communications. *See Overton*, 539 U.S. at 134–35; *Baxter I*, 999 F.3d at 1165. In concluding the Jail had a de facto ban on HRDC's ability to communicate its publications to inmates, the district court found that "except for softbound, hand-delivered Bibles and court rules contained in the Jail's milk crate [which served as the law library], the County's policies prohibited inmate access to *all* publications." Inmates at the Jail could not access the internet or other electronic reading options like a kiosk or tablet. During the relevant time period, Baxter County prohibited donations of books or publications to the Jail, so the only possible means of communicating with inmates was through postcards or speaking with an inmate via phone or in-person visitation. Baxter County contends the district court erred by finding no donations were permitted and by concluding postcards, phone calls, and visitation were not available alternatives.

We conclude the district court did not clearly err in finding a publisher could not donate its materials to the Jail. "We will reverse a finding of fact for clear error only if, despite evidence supporting the finding, the evidence as a whole leaves us

---

[4]In granting a permanent injunction, the district court concluded the Jail's current application of the postcard-only policy does not operate in a neutral fashion because the Jail now allows some publications albeit on an arbitrary and undefined basis. If a policy is not neutrally applied, it cannot withstand constitutional scrutiny. *See Turner*, 482 U.S. at 90. Baxter County does not address this determination on appeal.

with a definite and firm conviction that the finding is a mistake." *United States v. White*, 41 F.4th 1036, 1038 (8th Cir. 2022) (quoting *United States v. Holly*, 983 F.3d 361, 363 (8th Cir. 2020)). Moreover, "a credibility determination" underlying a factual finding "is virtually unreviewable on appeal." *Id.* (quoting *Holly*, 983 F.3d at 363). Baxter County primarily points to the county sheriff's testimony at the evidentiary hearing post-remand that HRDC could donate its legal materials to the Jail. But the district court found this testimony to lack credibility in light of the sheriff's testimony at the bench trial in 2019 agreeing that no publisher could send books into the Jail and no magazines were allowed in the Jail. Baxter County asserts this was error citing an HRDC employee's affidavit that discusses a phone call about the possibility of donations to the Jail, and the fact the sheriff, by the time of the evidentiary hearing, had added a redacted copy of two HRDC publications to the law library. This argument is unavailing considering the substantial deference we give to credibility determinations, combined with the district court's decision to consider the affidavit only for the purpose of establishing that HRDC likely believed the County would accept donations, not "for the truth of the matter asserted (i.e., that the County did in fact accept donations)."[5] In light of the repeated testimony that publications could not be sent to the Jail, "the district court's factual conclusions are plausible in light of the record." *See Kaplan v. Mayo Clinic*, 847 F.3d 988, 992 (8th Cir. 2017). We therefore will not reverse the decision in these circumstances under our clear error review. *Id.*

Nor do we find error with the district court's finding that postcards and speaking with inmates were not available alternatives for HRDC to communicate its publications to inmates. Baxter County principally relies on *Simpson* where we concluded postcards, phone calls, and in-person visits "were adequate alternatives to writing and receiving letters from [an inmate's] family members." *See Simpson*,

---

[5]On appeal, while Baxter County repeatedly cites this affidavit to support its challenge to the district court's factual finding, it does not challenge, or even mention, this evidentiary ruling. HRDC's mere belief that publications could be donated does not make donations an available alternative if the Jail would not actually accept them.

879 F.3d at 280–81. But as we explained in *Baxter I*, the alternative means available for a family member to communicate may be "illusory, impractical, or otherwise unavailable" when the outsider seeking to communicate is a distant publisher like HRDC. *Baxter I*, 999 F.3d at 1164–65 (distinguishing *Simpson*). *See also Overton*, 539 U.S. at 135 (noting that claimed alternatives must be "of sufficient utility"). Publications like books and magazines cannot practically be communicated through postcards, phone calls, or in-person visits from HRDC, so these are not available alternatives. *See Baxter I*, 999 F.3d at 1164–66. Thus, the Jail's policies created a de facto ban on HRDC's publications, and this factor favors HRDC.

Regarding the third and fourth factors, the district court found only a de minimis impact on the Jail's resources and its interests if it adopted an alternative policy permitting publishers like HRDC to send its publications to inmates at the Jail while continuing to limit to postcards nonlegal mail from other individuals. The district court noted that no publisher besides HRDC had ever sought to send publications to the Jail so there was no reasonable basis to believe that permitting publisher mail would have more than a slight impact on mail screening. Inspecting these few publications requires no more than a minute or two, and Jail staff explained their review of these materials amounted to shaking them around and flipping some pages. One Jail employee even explained he did not screen a local newspaper prior to distributing it to inmates, including those in segregation due to disciplinary issues, which the district court viewed as evidence that the Jail's concern about contraband from publishers was minimal. Baxter County "do[es] not need actual proof that institutional security will be advanced by the policy" to show a more than de minimis cost, *see Simpson*, 879 F.3d at 282, but we need not accept its "piling of conjecture upon conjecture" about potential costs in light of the evidence that was actually presented to the district court about the limited effects permitting publications would have, *see Salaam v. Lockhart*, 905 F.2d 1168, 1174 (8th Cir. 1990) (quotation omitted) (concluding the burden to the prison was minimal in light of the evidence that few would try to use the plaintiff's proposed accommodation). With the facts showing that HRDC was likely to be the only entity to send publications to the Jail and an absence of any nonspeculative basis to show that its mailings presented a

security threat, the district court did not err in finding an alternative policy with a de minimis cost to the Jail. Thus, the third and fourth factors also weigh in favor of HRDC.

In sum, the Jail imposed a de facto ban on publications even though it could provide an alternative accommodation with only a de minimis cost to its operations and interests. Having analyzed each factor, our task "is not balancing [them], but rather determining whether the [Jail] shows more than simply a logical relation" between its interests and the policy, "that is, whether [it] shows a *reasonable* relation" based on our conclusions on each factor. *See Beard v. Banks*, 548 U.S. 521, 533 (2006) (plurality opinion). Even if the first factor properly favors the Jail, each of the other factors supports the conclusion that its policy fails to cross the threshold from a logical relationship to a reasonable one. *See Turner*, 482 U.S. at 90–91 (noting the availability of an alternative policy with little cost is "evidence that the regulation is not reasonable"); *Overton*, 539 U.S. at 135 (stating that a lack of alternative means of communication, though not conclusive, is "evidence that the regulations were unreasonable"). Under these facts, with an onerous burden on the free speech right and little burden on the Jail to provide the requested accommodation, the district court did not err in concluding the Jail's policy is not reasonably related to its legitimate objectives. *See Turner*, 482 U.S. at 97–99 (finding a prison policy to be unconstitutional based on similar conclusions as to the second, third, and fourth factors).

If HRDC had an alternative means of communication (such as kiosks or tablets) or its proposed accommodation would impose more than a de minimis cost on the Jail, we may reach a different result as to the constitutionality of this application of the Jail's postcard-only policy, as we have in other cases with those different factual scenarios. *See Simpson*, 879 F.3d at 280–82; *Union County*, 111 F.4th at 935. "[A] *Turner* analysis is a fact-intensive inquiry requiring careful examination of the policies and institutions at issue in each case." *Simpson*, 879 F.3d at 282. Thus, none of our past cases nor this one support the proposition that a postcard-only mail policy is always or never permissible under the First

Amendment, whether applied to publishers or others. Instead, looking at the particular facts of those cases demonstrates why the policy survived scrutiny in those cases while violating HRDC's rights here. In *Simpson*, a mother who sought to send letters to her inmate son challenged the postcard-only policy. *Id.* at 275–76. Postcards, along with phone calls and visitation, were available alternative means of communication for letter writing. *Id.* at 280–81. A policy permitting letters increased the risk of contraband being sent by family or friends to inmates, while the alternative here still forecloses this threat by permitting publications only directly from publishers, from whom the Jail demonstrated minimal concern about contraband. *Union County* involved HRDC's attempt to send publications to a different Arkansas county jail, which were rejected due to its postcard-only policy. *Union County*, 111 F.4th at 933–34. But the similarities end there. The jail in Union County allowed its inmates to access publications electronically through tablets and kiosks so HRDC could provide its materials on those devices in lieu of mailing physical copies. *Id.* at 935. And the case came to the court following a jury verdict in favor of Union County, so our review required us to construe factual disputes over the costs of alternative policies in the light most favorable to the verdict. *See id.* at 934–35. These cases only underscore the importance of the factual record in any case applying the *Turner* factors. Different jails with different facts can result in different outcomes.

In light of the restrictiveness of the Jail's policy barring all publications in contrast to the limited impact accommodating publishers would have, we conclude the postcard-only policy was not reasonably related to its penological goals and was instead an exaggerated response constituting a blanket prohibition on HRDC's publications.[6] *See Turner*, 482 U.S. at 97–99; *Salaam*, 905 F.2d at 1173–74.

---

[6]Of course, this does not mean that the Jail must accept any HRDC publication mailed to it, only that it cannot reject them because they are not postcards. The Jail may have penological interests in prohibiting inmate access to certain publications. *See Murchison v. Rogers*, 779 F.3d 882, 887–93 (8th Cir. 2015). But there is a significant difference between banning certain issues or versions of publications and "a blanket ban on [publications] in the [jail]." *See id.* at 891. We only deal with the

## B. Attorney Fees

We now turn to the attorney fees awarded to HRDC. "We review *de novo* the legal issues related to the award of attorney's fees and costs and review for abuse of discretion the actual award of attorney's fees and costs." *Brands Int'l Corp. v. Reach Cos.*, 103 F.4th 501, 506 (8th Cir. 2024) (quoting *Ludlow v. BNSF Ry. Co.*, 788 F.3d 794, 803 (8th Cir. 2015)).

Baxter County first asserts the district court erred by awarding fees even though HRDC did not receive any compensatory damages. A prevailing party in a § 1983 suit may be awarded reasonable fees, 42 U.S.C. § 1988(b), and "a plaintiff who wins nominal damages is a prevailing party under § 1988," *Farrar v. Hobby*, 506 U.S. 103, 112 (1992). That said, in some cases, receipt of only nominal damages may represent only partial or technical success, justifying a reduction in or denial of a fee award. *Id.* at 114–15. But Baxter County ignores that HRDC received more than mere nominal damages here — it obtained a permanent injunction prohibiting the Jail from rejecting its publications under the postcard-only policy. This victory was not technical or partial but a full vindication of its central claim. The district court did not err in concluding "HRDC obtained excellent results" by prevailing on its free speech claim and deciding that fees therefore should not be reduced on this basis.

Baxter County's other challenges to the award are similarly unavailing. It argues HRDC's motion was untimely because its supporting brief was filed almost an hour late, but the district court did not abuse its discretion by excusing this minor delay based on excusable neglect and a lack of prejudice to Baxter County. *See Spirit Lake Tribe v. Jaeger*, 5 F.4th 849, 854–55 (8th Cir. 2021) (approving an extension of Rule 54's deadline where the district court did not abuse its discretion in finding excusable neglect). Nor did the district court err by reconsidering the

---

latter in this case and express no view on the constitutionality of rejecting specific mailings from HRDC for reasons other than them not being in postcard form.

propriety of a fee award and awarding "a fully compensatory fee" once HRDC received "excellent results" in this litigation following remand. *See Gilbert v. City of Little Rock*, 867 F.2d 1063, 1067 (8th Cir. 1989) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). Finally, we find no abuse of discretion in the amount of fees awarded. The district court awarded HRDC $259,350 in attorney fees. The district court considered Baxter County's arguments and substantially reduced the requested fee award, ultimately awarding approximately 45% of the fees HRDC sought. HRDC's significant fee award despite this substantial reduction is unsurprising given the difficulty of litigating the case since 2017. We therefore affirm the district court's award of attorney fees and costs.

## III. Conclusion

We affirm the district court's judgment and its award of attorney fees and costs to HRDC.

_____